**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GENERAL INSURANCE COMPANY OF AMERICA,** | ) | |
| **Plaintiff,** | ) | **No. 08 C 2787** |
| **vs.** | ) | **Magistrate Judge Jeffrey Cole** |
| **CLARK MALL, CORP. d/b/a DISCOUNT MEGA MALL CORP., MARCOS I. TAPIA, JUAN E. BELLO, JOSE L. GARCIA, LETICIA HURTADO, YOUNG S. KO, MARIANO KON, CHOONG I. KUAN, ROSA G. MADRIGAL, HILDA MENDOZA, MAN OK NO, HEE T. PARK, SUNG W. PARK, MARIA L. ROMAN, VICTOR H. VISOSO. KYUN HEE PARK, and JENNIFER PARK,** | ) | |
| **Defendants.** | ) | |

**AMENDED MEMORANDUM OPINION AND ORDER**

This case represents another chapter in the troubled history of the Discount Mega Mall in Chicago's Logan Square neighborhood. About a half dozen buildings comprise the mall, which over the years has housed dozens of small vendors, whose wares run an eclectic gamut from food to clothing to electronics and more. The Mall has been a political football and a source of neighborhood controversy: for some it is an example of urban blight; for others it has provided an opportunity to earn a living. In August 2002, the City of Chicago filed a two-count complaint against the mall and its owner, Discount Mega Mall Corp. and its president, Mr. Kyun Hee Park, which charged them with 100 separate violations of the City's health and safety Codes.

In 2005, the City shut the Mall down, this time citing its owners with another 113 Code

violations. The Mall reopened in November 2006, but in September of 2007, a fire destroyed one of its buildings. The mall was closed until late November 2007.

This case stems from a state court lawsuit filed in 2007 by 14 vendors who leased space at the Mall. The defendants were Discount Mega Mall Corporation ("Discount Mall"), Clark Mall Corp. d/b/a Discount Mega Mall Corporation ("Clark Mall"), Kyun Hee Park, and Jennifer Park. (*Counter-Plaintiffs' Motion for Judgment on the Pleadings*, Ex. A, ("Underlying Complaint")). The state court complaint detailed the health and safety code violations and recounted the 2007 fire. It charged the owners with fraud for having represented to the vendors, immediately following the Mall's closure in June 2005, that the Mall would be reopening soon: in fall of 2005, in time for the Christmas season. The plaintiffs/vendors relied, the underlying complaint alleged, on these assurances, staying on as tenants during the prolonged closure, and, as a result, lost profits, good will, and the value of merchandise stored in the Mall – the merchandise either expired, went out of season, was damaged, or became otherwise non-sellable.

They also alleged the owners violated Illinois' Consumer Fraud and Deceptive Business Practices Act, by making the foregoing misrepresentations and concealing the true nature of the mall's code violations from the tenants. The vendors add a negligence count, claiming the owners failed to exercise ordinary care in complying with the City's safety and health requirements. They say this failure led to the 2007 fire, which in turn destroyed the plaintiffs'/vendors' merchandise.

Thereafter, General Insurance Company of America ("GICA") filed the instant complaint seeking a declaratory judgment ("Complaint") regarding its duty to defend the defendants in the state court action under the terms of a commercial general liability policy issued to Discount Mega Mall Corp. for the period from January 27, 2007, through January 27, 2008. GICA submits that Clark

Mall Corp. does not qualify as an insured under that policy, and thus GICA has no duty to defend it against the Underlying Complaint in the state court. (Complaint, ¶¶ 36-43).[1] It also contends that it need not defend any defendant, insured or otherwise, against Count III of the Underlying Complaint because the property and assets of the plaintiffs in the Underlying Complaint were damaged while under the care of Discount Mega Mall Corp., and the policy excludes coverage for damage to "Property in the care, custody or control of the insured." (Complaint, ¶¶ 27, 53-56).

The defendants in the instant case have moved for a judgment on the pleadings. Apparently the argument is that since it is undisputed that Discount Mega Mall Corp. is insured under the relevant GICA policy, so too must be Clark Mall Corp. because the complaint charges that it did business as Discount Mega Mall Corp. The instant defendants further argue that the exclusion cited by GICA in the complaint for declaratory judgment does not "clearly and without doubt" apply because there are no allegations in the Underlying Complaint as to whether the property damaged was in the "care, custody or control" of the defendants. They also submit that a determination of whether the exclusion does apply would necessitate an inquiry into the facts pertaining to their liability on the Underlying Complaint – an inquiry which is outside the scope of a declaratory judgment action.

[1] GICA has since withdrawn certain of its contentions in the wake of changes to the Underlying Complaint – which is now in its third edition in state court. It initially claimed that Discount Mall was not named as a defendant and that the Parks did not qualified as insureds. (*Complaint for Declaratory Judgment*, ¶¶ 36-43). It also asserted that it need not defend against Counts I and II for various reasons. (*Id.*, at ¶¶ 45-51). These positions fell by the wayside by the time GICA responded to the defendants' motion for judgment on the pleadings. (*GICA's Response to Motion for Judgment on the Pleadings*, at 1). More on this later.

## II.
## ANALYSIS

### A.
### Law Applicable To A Motions For Judgment On The Pleadings And To An Insurer's Duty To Defend

A court should grant a motion for judgment on the pleadings "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved . . . ." *Bannon v. University of Chicago*, 503 F.3d 623, 628 (7th Cir. 2007); *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). In assessing such a motion, a court must accept the facts alleged in the complaint as true. *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004).

To determine whether an insurer owes a duty to defend, the court compares the allegations in the underlying complaint with the coverage provisions of the insurance policy. *St. Paul Fire and Marine Ins. Co. v. Village of Franklin Park*, 523 F.3d 754, 756 (7th Cir. 2008); *Guillen v. Potomac Ins. Co. of Ill.*, 203 Ill.2d 141, 785 N.E.2d 1, 7 (2003). "In a duty-to-defend action, we begin with the deck stacked in favor of the insured." *Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640, 643 (7th Cir. 2007). "'[A]llegations of the underlying complaint must be construed liberally, and any doubt as to coverage must be resolved in favor of the insured.'" *Id.* (quoting *Ill. State Med. Ins. Servs., Inc. v. Cichon*, 258 Ill.App.3d 803, 196 Ill.Dec. 277, 629 N.E.2d 822, 826 (3rd Dist. 1994)). Therefore, "'[i]f the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action.'" *Del Monte Fresh Produce*, 500 F.3d at 643 (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 189 Ill.Dec. 756, 620 N.E.2d

1073, 1079 (1993)); *St. Paul Fire and Marine Ins.*, 523 F.3d at 756. Moreover, the possibility that not all of the injuries complained of in the complaint may be covered does not obviate the duty to defend; so long as at least some injuries potentially fall within the scope of the policy, the insurer must defend the insured. *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998); *Maryland Cas. Co. v. Peppers*, 64 Ill.2d 187, 194, 355 N.E.2d 24, 28 (1976). If, on the other hand, it is clear from the face of the underlying complaint that the allegations do not even potentially fall within the scope of the policy, then the insured must mount its own defense. *Roman Catholic Diocese Of Springfield*, 139 F.3d at 565.

**B.**

**1.**
**GICA Has No Duty To Defend Clark Mall Corp. Because It Is Not An Insured Under The GICA Policy That Names As the "Insured" Discount Mega Mall Corp.**

The named insured in the GICA policy is "Discount Mega Mall Corp." (*Complaint for Declaratory Judgment*, Ex. A, pp. 1-12). Discount Mega Mall Corp. is designated in the policy as an "Organization Other Than A Partnership Or Joint Venture" (*id.*, p. 11), and so the policy's coverage extends to its "'executive officers' and directors . . . but only with respect to their duties as [Discount Mega Mall Corp.'s] . . . officers or directors." (*Id.*, Commercial General Liability Coverage Form, p. 9, Sec. II.1.d).[2] By its plain language, Clark Mall Corp. is not an insured. Indeed, Clark Mall Corp. is not mentioned anywhere in the policy.

Instead, the defendants simply submit that "[GICA] is obligated to defend Clark [Mall Corp.], because the Underlying Complaint named 'Clark Mall Corp. d/b/a Discount Mega Mall

[2] The policy provides for several other extensions of coverage, but none of these appear to apply, and the defendants do not suggest that any of them do.

Corp.'" (*Motion for Judgment on the Pleadings*, at 4). They do not expound on why this means that GICA must defend Clark Mall as well as Discount Mall – which is the only named insured – but perhaps they mean to argue that the two are one in the same. But coverage is not a function of speculation, and the complaint for declaratory judgment does not "plausibly" make out a case for ignoring corporate separateness.

Generally, the designation "d/b/a" or "doing business as" is merely descriptive of the person or corporation doing business under some other name and does not create a distinct entity. *Pekin Ins. Co. v. Estate of Goben,* 303 Ill.App.3d 639, 645-646, 707 N.E.2d 1259, 126 (5th Dist. 1999). But that's not the case here, for public records from the Illinois Secretary of State's Office demonstrate that Discount Mega Mall Corp. and Clark Mall Corp. are two separate entities that the Parks formed in 1993 and 1991, respectively. (www.ilos.gov/corporateilc/CorporateLlcController; *see also GICA's Response to Motion for Judgment on the Pleadings*, Ex. A).[3]

The plaintiffs in the state court action apparently knew or believed that the Parks used two separate corporations in the operation and/or ownership of the Mall and thus named them both to assure that the responsible entity would be in the case. Perhaps the Parks employ the entities interchangeably or dispense with the niceties of corporate formality – although there is nothing to support that conclusion. But even if they did, it would not permit the defendants in the instant case to disregard corporate separateness and convert an insurance policy for Discount Mega Mall Corp. into one for Clark Mall Corp.

The defendants' other argument is that their naming of Clark Mall Corp. as a defendant in

---

[3]A court may take judicial notice of the contents of certain matters in the public record. *Radaszewski ex rel. Radaszewski v. Maram,* 383 F.3d 599, 600 (7th Cir. 2004)

the Underlying Complaint was a "misnomer." They submit that: "[t]he Underlying Complaint clearly shows that the Underlying Plaintiffs intended to name Discount [Mega Mall] by naming "Clark Mall Corp. d/b/a Discount Mega Mall Corp.", along with its officer and agents, and by serving the Underlying Complaint upon Discount's registered agent." In other words, whenever the Underlying Complaint says "Clark Mall d/ba Discount Mall" it really just means "Discount Mall." (*Motion for Judgment on the Pleadings*, at 5).

The argument is self-refuting. First, "misnomer" applies where a plaintiff sues and serves the correct party but calls that party by the wrong name. *Wheaton v. Steward*, 353 Ill.App.3d 67, 70, 817 N.E.2d 1029, 1032 (2nd Dist. 2004). But Discount Mega Mall Corp. was in fact a named defendant in the underlying action, along with Clark Mall Corp. Crediting the defendants' current explanation would simply mean that the right party was sued twice – once under its right name and once under a wrong name. More importantly, the defendants' mistaken designation in the Underlying Complaint cannot require GICA to defend a corporation with which it had no policy of insurance.

Insurance policies are contracts, *Horning Wire Corp. v. Home Indem. Co.*, 8 F.3d 587, 589 (7th Cir. 1993); *Hobbs v. Hartford Ins. Co. of the Midwest,* 214 Ill.2d 11, 17, 823 N.E.2d 561, 564 (2005), and the most basic principle of contracts is that the contracting parties must agree to enter into the contract. *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 270 (7th Cir. 1995). Acceptance of the defendants' argument that the characterization of Clark Mall Corp. in the Underlying Complaint determines whether it is covered under the GICA policy with Discount Mega Mall would contravene this principle and effectively would impose a contractual relationship on GICA to which it never

agreed.[4] The defendants' argument is akin to saying that if the Underlying Complaint alleged that Sears had a hand in running the Mall, and did so doing business as Discount Mega Mall Corp., GICA would have to defend Sears, even though Discount Mega Mall Corp. was the only insured under the GICA policy.

There are other insufficiencies in the defendants' "misnomer" argument. Clark Mall Corp. and Discount Mega Mall Corp. are separate corporate entities, as the plaintiffs in the state court case recognized when they named both as defendants. If there really was a "misnomer," only one of the two corporate entities would have been named. However, the Underlying Complaint plainly recognized that there were two distinct corporate entities and it quite properly acknowledged that corporate separateness. That they have the same agent and officers, (www.ilos.gov/corporateilc/CorporateLlcController), is of no moment. The insured under the GICA policy was Discount Mega Mall Corp.[5]

In short, neither of the defendants' arguments for judgment on the pleadings on whether GICA is obligated to defend Clark Mall in the state court case are convincing. It may be noted that despite GICA's strenuous opposition to the defendants' arguments in its in response brief, the defendants seem to abandon their arguments in their reply brief. Whether or not this unresponsiveness was intentional, the defendants have failed to demonstrate that they are entitled to a judgment that GICA is obligated to defend Clark Mall under the GICA policy that names

---

[4] An insurance carrier cannot have forced upon it a risk to which it does not agree. *Cf. Wyatt v. UNUM Life Ins. Co. of America*, 223 F.3d 543, 547 (7th Cir. 2000).

[5] Even if all the stock of a corporation is owned by one person, the corporation is an entity different from that of the stockholder. *Kush v. American States Ins. Co.*, 853 F.2d 1380, 1383 -1384 (7th Cir. 1988).

Discount Mega Mall Corp. as the insured. This much of the defendants' motion for judgment on the pleadings must be denied.

**2.**
**GICA Has Not Shown That It Is Clear And Free From Doubt That Exclusion 2(j) Of Its Policy With Discount Mega Mall Precludes Coverage**

The other issue in defendants' motion for judgment on the pleadings is whether GICA has a duty to defend any of the defendants in the instant case against Count III of the Underlying Complaint, which seeks damages for "the destruction of [Underlying Plaintiffs'] merchandise and other tangible assets stored or placed in their retail spaces [in the Mall] . . . ." (Underlying Complaint, ¶ 89). GICA contends that exclusion 2(j) of the policy applies to preclude coverage for this damage. That exclusion covers "'[pr]operty damage' to . . . Personal property in the care, custody or control of the insured; . . ." (*Complaint for Declaratory Judgment*, Ex. A, Commercial General Liability Coverage Form, p. 5, Sec. I.2.j(4)). The defendants argue that, even if there is some doubt as to whether the exclusion applies, that doubt must be resolved in favor of coverage.

It is the burden of the insurer to show that a claim falls within a provision that limits or excludes coverage. *Essex Ins. Co. v. Soy City Sock Co.*, 503 F.Supp.2d 1068, 1073 (C.D.Ill. 2007). Provisions purporting to exclude or limit coverage are to be read narrowly and applied only where the terms are "clear, definite, and specific." *State Farm Fire and Cas. Co. v. Perez*, 387 Ill.App.3d 549, 899 N.E.2d 1231 (1st Dist. 2008). It must be clear and free from doubt that the exclusion at issue prevents coverage. *Certain Underwriters at Lloyd's, London v. Boeing Co.*, 385 Ill.App.3d 23, 39, 895 N.E.2d 940, 955 (1st Dist. 2008).

The exclusion at issue here is a common one. Under Illinois law, the "care, custody or control" exclusion precludes insurance coverage if a "'two-pronged test'" is met: (1) the property

was "'within the possessory control of the insured at the time of the loss'"; and (2) the property was "'a necessary element of the work performed [by the insured].'" *Essex Ins. Co. v. Soy City Sock Co.*, 503 F.Supp.2d 1068, 1074 (C.D.Ill. 2007)(quoting *Essex Ins. Co. v. Wright*, 371 Ill.App.3d 437, 308 862 N.E.2d 1194, 1197 (2007)). The control exercised by the insured must be exclusive, but it need not be continuous; if the insured has possessory control at the time the property is damaged, the exclusion applies. *Country Mutual Insurance Co. v. Waldman Mercantile Co.*, 103 Ill.App.3d 39, 42, 430 N.E.2d 606, 609 (5th Dist. 1981); *Essex Ins.*, 371 Ill.App.3d at 441, 862 N.E.2d at 1197. An insured does not have "care, custody or control" of another's property, when the insured has temporary or incidental access to the property or limited possession of an area of the property rather than care, custody or control of the property itself. *Bolanowski v. McKinney,* 220 Ill.App.3d 910, 914, 581 N.E.2d 345, 348 (1st Dist. 1991).

"To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73-74, 578 N.E.2d 926, 930-931 (1991). GICA's argument for the applicability of the exclusion makes no reference to the Underlying Complaint at all. The vendors/plaintiffs in the state case alleged that their merchandise was destroyed in a fire at defendants' mall – a fire that resulted from defendants' negligence. (Underlying Complaint, ¶ 89). Presumably, that merchandise was in the "retail space[s]" the vendors were renting from the defendants. (Underlying Complaint, ¶¶ 2-16). That leaves unanswered a number of the kinds of questions that courts have deemed necessary to a determination whether the "care, custody or control" exclusion applies.

For instance, who had access to the property, and who could have moved it? Part and parcel of the requisite "possessory control" is "whether defendants were granted or exercised the right of access to the equipment in order to maintain, move, or protect the [merchandise]." *Bolanowski*, 220 Ill.App.3d at 915, 581 N.E.2d at 349. And whether "defendants were accorded or exercised the prerogative to do anything with or to the plaintiffs' equipment" is also significant. *Id.* Nothing in the Underlying Complaint says one way or the other. Did the vendors have access to the merchandise at the time of the fire or outside of business hours? *See Country Mut. Ins. Co. v. Waldman Mercantile Co., Inc.*, 103 Ill.App.3d 39, 43, 430 N.E.2d 606, 60 (5th Dist. 1981). The Underlying Complaint provides no clues to these inquiries, and thus the plaintiff cannot prevail.

*Bolanowski* is instructive in this case. There, musicians had contracted to play a series of shows at the defendant's lounge, and they stored their instruments there during off hours. Those instruments were destroyed when a fire ripped through the building. The musicians sued for negligence and prevailed. Thereafter, they sued the lounge's insurance carrier in a garnishment proceeding. The carrier defended by invoking an exclusionary clause like that in the GICA policy. After examining the musicians' complaint against the defendant owner in the underlying case, the Circuit Court concluded that the prior negligence suit did not clearly fall within the policy exclusion regarding damage to property in the care, custody or control of the defendant and thus the carrier was liable for indemnity. The Illinois Appellate Court affirmed.

The underlying complaint in *Bolanowski* was far more informative than the Underlying Complaint here. For example:

> Plaintiffs' complaint alleged that defendants had the duty to "equip, maintain, control and operate their premises with caution and diligence and to have due regard for the rights and safety of all persons and property lawfully and rightfully therein and

> thereupon." Plaintiffs alleged that "the premises were under the control of" the defendants at the time of the fire, and that defendants had "negligently maintained, operated and controlled" the premises. Specifically, plaintiffs alleged that defendants had carelessly, negligently and improperly: (1) operated and controlled the grill, (2) maintained the wiring in the premises, (3) left oily rags or other articles within the premises, or (4) failed to lock the doors upon leaving or otherwise secure the premises from the entry of vandals. Plaintiffs alleged that defendants had "otherwise so carelessly, negligently and improperly operated and controlled the premises that it burned to the ground with the plaintiffs' equipment located therein."

*Bolanowski*, 220 Ill.App.3d at 915, 581 N.E.2d at 349. Despite these relatively comprehensive allegations, the court concluded that they were insufficient for a determination that the damage fell within the "care, custody or control" exclusion. 220 Ill. App. 3d at 917, 581 N.E.2d at 350. The court found analogous a Florida case that rejected an identical claim involving musicians' instruments that had been destroyed in an overnight fire at the club where they were playing and had left their instruments because "[t]here [wa]s absolutely no evidence in the record that [defendant] 'could do' anything with the equipment." The Florida Appellate Court concluded that "'[i]t does not follow that simply because equipment is left on the premises, the requisite elements of care, custody or control are established.'" 220 Ill.App.3d at 917, 581 N.E.2d at 350 (quoting *Shankle v. VIP Lounge, Inc.*, 468 So.2d 548, 549 (Fla.App.1985). *Bolanowski* is indistinguishable from the instant case.

Significantly, GICA points to nothing in the Underlying Complaint from which it can be determined that Discount Mega Mall Corp., its insured, had any possessory control of the vendors' wares. Indeed, its brief ignores the Underlying Complaint. While it is true that in Illinois the court is confined to the insurance policy and the allegations of the underlying complaint, *St. Paul Fire and Marine Ins.*, 523 F.3d at 756; *Guillen v. Potomac Ins. Co. of Ill.*, 785 N.E.2d at 7, in some instances, courts have allowed for the consideration of evidence beyond the underlying complaint, with the

proviso that the court not determine an issue critical to the underlying action. *American Economy Ins. Co. v. Holabird and Root*, 382 Ill.App.3d 1017, 1031, 886 N.E.2d 1166, 1178 (1st Dist. 2008); *West Bend Mut. Ins. Co. v. Sundance Homes, Inc.*, 238 Ill.App.3d 335, 338, 606 N.E.2d 326, 328, (1st Dist. 1992). In *Fidelity & Cas. Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill.App.3d 301, 304, 461 N.E.2d 471, 473 (1st Dist. 1983), which is often cited in this context, the court put it this way:

> It is certainly true that the duty to defend flows in the first instance from the allegations in the underlying complaint; this is the concern at the initial stage of the proceedings when an insurance company encounters the primary decision of whether to defend its insured. However, if an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions.

122 Ill.App.3d at 304, 461 N.E.2d at 473.

Of course, had GICA submitted evidence on this issue–it has not, although it says it has evidence – the defendants' motion would have to be converted to a motion for summary judgment. Fed.R.Civ.P. 12(d); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008). Indeed, the courts considering such evidence to determine whether the "care, custody or control" exclusion applies have done so in the context of summary judgment. *American Economy*, 382 Ill.App.3d at 1021, 886 N.E.2d at 1170; *West Bend Mut.*, 238 Ill.App.3d at 338, 606 N.E.2d at 328; *Fidelity & Cas. Co. of New York*, 122 Ill.App.3d 305, 461 N.E.2d at 474.

Rather than looking to the Underlying Complaint or offering affirmative evidence that would support a conclusion that the care, custody or control exclusion was applicable here, GICA oddly relies on its own complaint for declaratory judgment and invokes the principle that a court must accept as true allegations in a complaint when considering a motion for judgment on the pleadings.

The argument runs this way: the Complaint for Declaratory Judgment alleges that "the underlying plaintiffs' property was 'within the care, custody or control of Discount and its agents and employees; " therefore, GICA cannot be liable under the insurance policy's exclusion. (*GICA's Response to Motion for Judgment on the Pleadings*, at 3-4; *Complaint for Declaratory Judgment*, ¶ 55). For GICA, the matter is at an end, and the defendants' motion for judgment on the pleadings is thwarted. The problem with the syllogism is that while a court must accept allegations as true in this context, *Radaszewski*, 383 F.3d at 600, it need not accept legal conclusions. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002); *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir.2003). And that's what GICA's allegation is. *See Certain Underwriters at Lloyd's, London v. Boeing Co.*, 385 Ill.App.3d 23, 40, 895 N.E.2d 940, 955-956 (1st Dist. 2008).

GICA also mentions that its complaint for declaratory judgment claims that "at the time of the fire . . . the only persons with access to the building or the merchandise and other tangible assets of the Underlying Plaintiffs were Discount and its employees or agents." (*GICA's Response to Motion for Judgment on the Pleadings*, at 3; *Complaint for Declaratory Judgment*, ¶ 54). Setting aside for the moment the fact that the Underlying Complaint makes no allegations as to the time of the fire, whether the mall was open, and whether the vendors did or did not have access to their merchandise, this one "fact" – if it is a fact, GICA does not suggest it has any evidence of it – would not render the exclusion applicable[6].

---

[6] According to one leading treatise to determine whether property is under the care, custody, or control of an insured, courts consider the location, size, and other characteristics of the property, and the insured's relationship to the property, including the insured's duties with respect to the property, nature and extent of the insured's control over the property, and any interest the insured may have in the property. 9 Lee (continued...)

For one thing, it does not answer the question of "whether [the insured was] granted or exercised the right of access to the [vendor's wares] in order to maintain, move, or protect the [merchandise]." *Bolanowski*, 220 Ill.App.3d at 915, 581 N.E.2d at 349. So far as can be ascertained by the Underlying Complaint, the insured did not have the requisite possessory control at the time of the fire. For example, the Second Amended Complaint alleged that the vendor's "leased retail space at the Mega Mall." (*Second Amended Complaint*, ¶¶2-18; 75-76). The vendors paid for these "retail spaces" in which "their merchandise and other tangible assets [were] stored or placed...." (¶89). In short, it simply cannot be said that it is "clear and free from doubt" that the "care, custody or control" exclusion applies. *Lloyd's, London*, 385 Ill.App.3d at 39, 895 N.E.2d at 955 .

It cannot be stressed too much that there is no evidence on this point; GICA does not so much as advert to any. When courts apply Rule 12(d) to convert a motion for judgment on the pleadings or to dismiss to a motion for summary judgment, they do so because the parties submit, or at least discuss, evidence. *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008)(evidence attached to 12(b)(6) motion); *Allen v. Martin*, 460 F.3d 939, 942 (7th Cir. 2006)(12(c) motion relied on evidence outside of pleadings); *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 885 (7th Cir. 2005)(12(c) motion relied extensively on attached evidence); *Walker v. Mitsubishi Motor Mfg. of America, Inc.*, 113 Fed.Appx. 711, 712 (7th Cir. 2004)(12(b)(6) referred to documents outside the pleadings); *Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir 2002)(both parties submitted evidence on motion to dismiss); *Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469,

---

[6](...continued)
R. Russ & Thomas F. Segalla, Couch on Insurance 126:22 (3d ed.2007). The great majority of the cases, states the treatise, support the view that property in the care, custody, or control of the insured refers to possessory handling of the property as distinguished from proprietary control. *Mullin v. Travelers Indem. Co. of Conn*,. 541 F.3d 1219, 1224 -1225 (10th Cir.2008).

479 (7th Cir. 2002)(relied on material and affidavits produced in evidence); *Marques v. Federal Reserve Bank of Chicago*, 286 F.3d 1014, 1017 (7th Cir. 2002) (12(b)(6) motion converted to summary judgment when defendant attached materials outside the complaint).

GICA cites no case, and we have been unable to find one, that remotely suggests let alone holds that in the context presented by this case, that an insurance carrier can defeat a party's motion for judgment on the pleadings regarding the applicability of a care, custody or control exclusion simply by pleading that damaged property was in the care custody or control of the insured.

The only case GICA relies on is *Country Mutual*. There, as here, vendors leased space at a discount center from the insured, and a fire destroyed their property. But unlike here, the insurance company presented evidence to demonstrate: who was on duty when the fire broke out; whose employees had access to which retail spaces; whose employees transported merchandise into the discount center; whose employees had keys to the premises; who determined business hours; whose employees handled sales; who was responsible for maintenance and; whose employees were responsible for protection of the merchandise. 103 Ill.App.3d at 41-42, 430 N.E.2d at 608-09. Significantly, there was also evidence proving that the merchandise was placed in the care of the insured under consignment. That is, the vendors retained title to the merchandise but delivered possession of it to the insured for sale. 103 Ill.App.3d at 43, 430 N.E.2d at 610. That is a far cry from the facts disclosed on the scanty record thus far assembled.

GICA refers to no evidence and hints at nothing outside its own complaint that would lead one to believe a conversion to summary judgment was warranted.[7] Now would have been the time

---

[7] The attorneys for GICA have a wealth of litigation experience in the federal courts, www.johnsonandbell.com, and are of course experts in the Federal Rules of Civil Procedure. That they have (continued...)

to do any of those things. GICA simply relies on two allegations, one being a conclusion of law. An allegation in a complaint is simply not evidence, and it's nothing that GICA could rely on even if this matter were converted to a motion for summary judgment. *Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d 918, 925 (7th Cir. 2008); *Diaz v. Prudential Ins. Co. of America*, 499 F.3d 640, 643 (7th Cir. 2007). Accordingly, the defendants are entitled to judgment on the pleadings regarding GICA's duty to defend against Discount Mall and the Parks on Count III of the Underlying Complaint. Because it has a duty to defend on that Count, it must defend them against all counts. *Roman Catholic Diocese of Springfield*, 139 F.3d at 565 (7th Cir. 1998); *Peppers*, 64 Ill.2d at 194, 355 N.E.2d at 28.[8]

**D.**
**The Defendants Are Not Entitled To The Costs And Fees They Seek**

Finally, the defendants seek costs and fees for defending against GICA's declaratory judgment action, arguing that the filing of the action was "unreasonable and vexatious." The Illinois insurance code does allow courts to award costs and attorney's fees to an insured when an insurer's action is deemed "vexatious and unreasonable." *Medical Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007); 215 ILCS 5/155. Whether an insurer acted unreasonably or vexatiously presents an issue of fact, requiring the court to consider the totality of circumstances. *Medical*

---

[7](...continued)
not so much as adverted to Rule 12(d)'s conversion provision rather strongly suggests that GICA has nothing beyond its allegations to support the applicability of the "care, custody or control" exclusion. *Compare Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008) (Posner, J)("[I]f there is an executed standstill agreement, one would expect an allegation to that effect. There is none. The complaint's silence is deafening.").

[8] As such, it would not matter whether GICA abandoned its arguments against defending on Counts I and II or not. *See* note. 1, *supra.*

*Protective*, 507 F.3d at 1086. If there is a bona fide dispute regarding coverage – a dispute that is "[r]eal, genuine, and not feigned" – statutory sanctions are inappropriate. *Id.*

Here, there was a bona fide dispute, as evidenced by the fact that the defendants did not completely succeed on their motion for judgment on the pleadings. They sought coverage for an entity that was not named in the insurance policy, and they did so with scant support for their position. They fared better with their arguments regarding Count III of the Underlying Complaint, but that was just one claim in their motion. Given the totality of the circumstances, it cannot be said that GICA's resistence to providing a defense was vexatious and unreasonable.

The question of whether the "care, custody or control" exclusion applied here was perhaps not as simple as the defendants' opening brief argued in asking for sanctions under 215 ILCS. 5/155. Only two cases were cited, neither of which were helpful. (*Motion for Judgment on the Pleadings*, at 7-8). In *Leiter Elec. Co. v. Bituminous Cas. Corp.*, 99 Ill.App.2d 386, 241 N.E.2d 325 (3rd Dist. 1968), the question was whether a subcontractor engaged to install electrical equipment had "care, custody, or control" of the water main it damaged when it used the pipe to ground the system. The pipe being firmly attached to the real estate, the court determined it did not. 99 Ill.App.2d at 389, 241 N.E.2d at 27-28. *Bituminous Cas. Corp. v. Chicago, R. I. & P. R. Co.*, 8 Ill.App.3d 172, 289 N.E.2d 464 (3rd Dist. 1972) dealt with a similar, more or less "immovable" object: an upended railroad boxcar. The issue received somewhat more extended treatment in the reply brief, but that's usually regarded as a bit late to be fully developing an argument. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005).

The defendants also submit that it was unreasonable and vexatious for GICA to withdraw its claim that it need not defend Discount Mall or the Parks when it did; the defendants think it was too

late. But this original claim was based on an earlier version of the Underlying Complaint which named Clark Mall as a defendant and the Parks as Clark Mall's officers. (*Complaint for Declaratory Judgment*, Ex. B). As already indicated, Clark Mall is not named in the policy, and the Parks are not insured as officers of Clark Mall. GICA withdrew this argument based on a later version of the Underlying Complaint that did name Discount Mall and the Parks, as its officers, as defendants. This was clearly not vexatious and unreasonable. It was a responsible reflex to changes in the Underlying Complaint.

**CONCLUSION**

The motion for judgment on the pleadings [# 43] is GRANTED in part and DENIED in part.

ENTERED: ______________________________
UNITED STATES MAGISTRATE JUDGE

DATE: 4/16/09