IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL INSURANCE COMPANY OF AMERICA, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 08 C 2787 |
| vs. | ) ) ) | Magistrate Judge Jeffrey Cole |
| CLARK MALI. CORP. d/b/a DISCOUNT MEGA MALL CORP., MARCOS I. TAPIA, JUAN E. BELLO, JOSE L. GARCIA, LETICIA HURTADO, YOUNG S. KO, MARIANO KON, CHOONG I. KUAN, ROSA G. MADRIGAL, HILDA MENDOZA, MAN OK NO, HEE T. PARK, SUNG W. PARK, MARIA L. ROMAN, VICTOR H. VISOSO. KYUN HEE PARK, and JENNIFER PARK, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This case stems from a fire that destroyed at least a portion of the defendants' Discount Mega Mall, along with some vendors' merchandise. The vendors sued the defendants to recoup their losses in state court, and the defendants made a claim to their insurance company, General Insurance Company of America ("GICA"), both for a defense in the state court action and indemnification. In turn, GICA filed a declaratory judgment action against the defendants, arguing that it had no duty to defend them in the state court case. About a year into the proceedings, on April 16, 2009, the defendants filed a counterclaim against GICA, asserting not only that it had a duty to defend them, but was obligated to indemnify them for the damages to the mall.

On December 4, 2009, A. Schoeneman &Co., Inc. filed a motion to intervene in this case.

Schoeneman is the public adjuster the defendants hired to estimate the damage the fire caused the mall. That figure came in at just over $2 million. Pursuant to its contract with Discount Mega Mall, Schoeneman is to be paid "5% of whatever may be recovered from said claim or claims either by settlement, suit or any other means." (*Motion to Intervene*, Ex. 1A). Schoeneman admits that its recovery is entirely contingent on the resolution of the defendants' counterclaim. (*Id.* at ¶6). Indeed, that is the basis for its motion. It also contends that it should be allowed permissive intervention because "there are common questions of fact in determining the amount of loss" and "common questions of law in terms of whether the contract of insurance applies to this loss." (*Motion to Intervene*, at 4).

## I.
## INTERVENTION UNDER RULE 24(a)

### A.
### Schoeneman Has Not Carried Its Burden Of
### Showing That Its Motion To Intervene Is Timely

Rule 24, in pertinent part, requires the court, on timely motion, to permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." See *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007). The party seeking intervention has the burden of establishing each of these elements. *United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir.2003). The failure to prove even one requires denial of an intervention motion. *American National Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 148 (7th Cir. 1989); *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386

(7th Cir.1984).

In its laconic, three-page motion, Schoeneman offers only a skeletal, conclusory statement to support its contention that it was entitled to intervene as of right. Not a single case is cited:

> ... Schoeneman's ability to recover under said adjusting contract, and the amount of his [sic] recovery, is dependant and entirely contingent upon the Court's resolution of the subject matter of the instant action, which is whether [GICA] must indemnify Discount Mega Mall Corp for the property loss sustained in the fire, and if so, the amount of the loss. Thus disposing of the underlying litigation would necessarily impair or impede Schoeneman's ability since the only way Schoeneman can recover money under the adjusting contract is if the court rules that [GICA] must indemnify Discount Mega Mall Corp. for the loss.

(*Motion to Intervene*, at 3,¶ 9).

The motion does not even mention the timeliness requirement. Perhaps because Schoeneman waited eight months after the defendants filed their counterclaim to seek intervention. That's not necessarily damning, but it could be depending on the facts of the case. *See, e.g., N.A.A.C.P. v. New York*, 413 U.S. 345, 367 (1973)(17-day delay rendered motion untimely); *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1018 (7th Cir. 2002)(court had discretion to find ten-month delay in filing too long). But the facts of the case can't be weighed without some kind of showing from the movant.

A "prospective intervenor" should file "as soon as . . . [it] knows or has reason to know that [its] interests might be adversely affected by the outcome of the litigation he must move promptly to intervene." *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). A court must consider the length of time the intervenor knew or should have known of his interest in the case in determining whether a motion is timely. *Id.*; *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir.1991). The motion is silent on these questions even though it is the burden of the movant

to make the case for intervention, not for the opponent to negate it.

Here, all that is known is that Schoeneman knew that its right to payment from the defendants was contingent on defendants' recovery from GICA as of September 10, 2007, the date Schoeneman and the defendants executed their contract, and that it waited eight months to seek intervention after the defendants filed their counterclaim. That might be too long, it might not. The point is, with no input from Schoeneman, there is not enough to conclude the claim is timely. *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 175 (7th Cir. 1995)(movant "must first establish how long he knew or should have known of his interest in this case."). It is not a court's obligation to research and construct the legal arguments for the parties. *United States. v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008); *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008); *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002).

In determining timeliness, a court should also consider: the prejudice to the original parties caused by the delay and the prejudice to the intervenor if the motion is denied. *Babbit*, 214 F.3d at 949; *Ragsdale*, 941 F.2d at 501. Schoeneman's motion does not address the question of prejudice, and it is GICA's contention that it will be prejudiced by Schoeneman's intervention because it would result in a waste of the parties' and the court's. (*Plaintiff/Counter-Defendant's Response*, at 4). *Cf.*, *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009)("Had the association sought to intervene earlier, its motion would doubtless (and properly) have been denied on the ground that the state's attorney general was defending the statute and that adding another defendant would simply complicate the litigation.")(parenthesis in original).

The only apparent prejudice to Schoeneman that can be extracted from the motion is that it believes that it can make out a better case for how much the fire loss was – thereby upping the

amount it will receive under its contract with the insureds – if it is in the case. Unfortunately, all there is is Schoeneman's *ipse dixit* for that proposition. But unsupported claims in briefs do not count. *See e.g. Ho v. Donovan*, 569 F.3d 677, 682 (7th Cir. 2009); *Woolard v. Woolard*, 547 F.3d 755 (7th Cir.2008); *United States v. Stevens*, 500 F.3d 625, 628-629 (7th Cir.2007); *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir.2006); *United States ex rel. Feingold v. AdminiStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir. 2003);*Campania Management Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002)

Moreover, Schoeneman's three-paragraph contract, which it drafted, does not guarantee any particular payment. Rather, the amount to be paid is specifically tied to 5% "of whatever may be recovered from said claim or claims either by settlement, suit or in any other manner." (*Motion to Intervene*, at 3, ¶9 and Ex. 1-A). Thus, Schoeneman's contract recognized the possibility of a lawsuit, and of course, there is no certainty in the outcome of any litigation. And any number of other contingencies could prevent recovery and thus any payment to Schoeneman. There might be no coverage under the terms of the policy because of some exclusion (as GICA contends); the defendants might have acted recklessly or intentionally; the policy might have lapsed, etc. As a sophisticated public adjuster, Schoeneman knew all this. Schoeneman is in that position whether it is allowed to intervene or not. Hence, there is not prejudice to Schoeneman if the motion is denied.[1]

---

[1] The Seventh Circuit has indicated that "in the absence of any indication of prejudice to [the parties already in the suit], [a] motion cannot be adjudged untimely as a matter of law." *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1027 (7th Cir.2006). The court found that in the absence of prejudice, even a six-week delay would not necessarily be untimely." *Id.* It's unclear how far this would go – how many weeks, months, or years a movant could wait, as long as the parties to the suit were not prejudiced. And it is not clear how a motion like Schoeneman's – one that is skeletal at best – would be regarded. But, it would seem
(continued...)

---

[1](...continued)
that, under *Craddieth*, the statutory requirement of a "timely motion" is not solely a temporal concept.

## B.
## Schoeneman Has Not Shown That It Has An Interest
## Sufficient To Warrant Intervention As Of Right Under Rule 24(a)

Rule 24(a) requires that a movant demonstrate that it has a sufficient interest related to the subject matter of the litigation. The "interest" asserted must be "direct and concrete" and "accorded some degree of legal protection." *Diamond v. Charles*, 476 U.S. 54, 75 (1986). It must be more than a "'betting' interest." *Security Insurance. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir.1995). It cannot be speculative or conditional. "An interest that is remote from the subject matter of the proceeding or that is contingent upon the occurrence of a sequence of events before it becomes colorable will not satisfy the rule." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2nd 2001). Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value. *Security Insurance. Co. of Hartford*, 69 F.3d at 1381.

Just what this all means can be elusive, as Judge Posner has explained:

Cases say for example that a mere "economic interest" is not enough. While that is a confusing formulation – most civil litigation is based on nothing more than an "economic interest" – all that the cases mean is that the fact that you might anticipate a benefit from a judgment in favor of one of the parties to a lawsuit – maybe you're a creditor of one of them – does not entitle you to intervene in their suit.

*Flying J, Inc.*, 578 F.3d at 571.

Schoeneman's motion consists of a single conclusory paragraph, *see supra* at 3, which fails to cite even one case in support of its *ipse dixit* that it is entitled to intervene as of right, even though the Seventh Circuit has stressed time and again that "[p]erfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived." *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th 2009); *Alden*, 527 F.3d at 664; *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006);

7

*United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991). It is not until the reply brief that Schoeneman cites a case – and only one – and even then it does not discuss timeliness, and its treatment of the criteria that must be satisfied for intervention under Rule 24(a) is exceedingly brief

But leaving for a reply brief argument and authority that could and should have been in the opening brief is a stratagem that the courts have frowned on. *Cf. United States v. Portis*, 542 F.2d 414, 418 (7th Cir. 1976) (condemning "gamesmanship in getting the last word"); *Cornucopia Institute v. U.S. Dept. of Agriculture*, 560 F.3d 673, 678 (7th Cir. 2009)(waiting until the reply brief is "too little, too late."); *Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir. 2009); *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir.2005). Waiting to make the case until the reply can effectively result in a one-sided presentation, which is inconsistent with the premise on, which the adversary system is based. In addition to being unfair to one's opponent, the tactic of saving the best for last adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides. *Cf., Adamson v. California*, 332 U.S. 46, 59 (1947) (Frankfurter, J., concurring). *Compare United States v. James Daniel Good Real Property*, 510 U.S. 43, 55 (1993); *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir.1992).

To assure that the opponent of the motion is not deprived of a meaningful opportunity to respond to the arguments in support of the motion – which is the inevitable result of withholding arguments until the reply brief – a court must either invoke the waiver doctrine or allow the filing of a sur-reply. *Beaird v. Seagate Technology*, 145 F.3d 1159 (10th Cir.1998); *Commonwealth Edison v. U.S. Nuclear Regulatory Commission*, 830 F.2d 610, 621 (7th Cir.1987); *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir.2002). Neither course is particularly attractive: the former punishes (permissibly) the client for his lawyer's omission, while the latter results in an additional

8

and needless expenditure of judicial resources. The shortness of life imposes constraints on the amount of time that a judge has to devote to any given problem. Sur-replies necessitated by inappropriate reply briefs take time away from other litigants who are waiting in the endless queue of cases. *Cf. Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987). The way Schoeneman chose to brief the case resulted in the very *sur-reply* that should have been unnecessary. (Document No. 128).

But even on the merits, Schoeneman has failed to demonstrate that it has the kind of "direct and concrete" interest the cases require. *See supra* at 5. Indeed, Schoeneman's interest could scarcely be more contingent and attenuated. It gets nothing under the contract unless the defendants prevail on their counterclaim or settle with GICA. It is nothing more than a "betting interest in the outcome of a case." *Reich,* 64 F.3d at 322. "In such a case, a third party who has some outstanding monetary claim from one of the parties attempts to intervene to ensure that the outcome of the case preserves as much of its claim as possible." *Id.* That is all Schoeneman's interest amounts to here, and it does not argue otherwise. That is an insufficient interest under Rule 24(a) for intervention as of right.

## C.
### Schoeneman's Interests Are Adequately Represented By The Defendants

We come then to the question of whether Schoeneman's interests are adequately represented by the defendants. If they are, the motion must be denied. It is simply beyond debate that the interests of the defendants and Schoeneman are perfectly "aligned" with Discount Mega Mall, as Schoeneman has expressly conceded in its reply brief. (*Reply* at 3, Document No. 126). Because the two have the same goal – that the GICA policy of insurance cover the appropriate insureds and

that they recover in accordance with the terms of the policy – it must be presumed that the defendants adequately represent Schoeneman's interests. *See Shea v. Angulo*, 19 F.3d 343, 348 (7th Cir. 1994); *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991); *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir.1996) ("Where an applicant for intervention and an existing party 'have the same ultimate objective, a presumption of adequacy of representation arises.'"); *American Nat'l Bank and Trust Co. v. City of Chicago*, 865 F.2d 144, 148 n. 3 (7th Cir.1989).

All that Schoeneman contends – tardily, in its reply brief – is that it has more sophisticated knowledge regarding damages than the defendants. (*Reply* at 3). There are four flaws in this contention. First, coming for the first time in the reply brief, the argument is waived. *See United States v. Boyle*, 484 F.3d 943, 946 (7th Cir. 2007). Second, it is supported only by the statement in the brief, and that is not enough, *see supra* at 5, even if a greater degree of sophistication regarding damages were an appropriate criterion to determine the adequacy of representation. Third, Schoeneman's claimed expertise might make it a persuasive witness in a case like this, *see e.g., Dyback v. Weber*, 114 Ill.2d 232, 500 N.E.2d 8 (1986); *Volpe v. IKO Industries, Ltd.*, 327 Ill.App.3d 567, 576, 763 N.E.2d 870, 877 (1st Dist. 2002), but it is not a basis for intervention.

If it be true that the soundness of a conclusion may not infrequently be tested by its consequences, *Florida Power & Light Co. v. United States Nuclear Regulatory Commission*, 470 U.S. 729, 741 (1985); Posner, Cardozo: A Study in Reputation, 118 (1990), then the theory advanced by Schoeneman must be rejected. If Schoeneman is right, in every case involving a public adjuster, the adjuster, if it chose, could intervene as of right, because he knew more about calculating losses than the insured. No case remotely hints at, let alone supports, this result. Finally, while a public

adjuster may have greater expertise in dealing with insurance companies and putting together a claim than does the ordinary insured, it by no means is certain that he knows more about the value of the loss, itself, than does the insured.

Schoeneman also argues in its reply brief that it should be allowed to intervene as of right under *Security Insurance Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377 (7th Cir. 1995), which it contends "stands for the proposition that a *third party beneficiary* to an insurance policy, not the insured and not the insurer, has a sufficient interest to justify intervention when the only way it can collect damages is if the underlying policy is in full force and effect." (*Reply* at 2)(Emphasis supplied). The difficulty with the contention is that its underlying premise – even if true – is irrelevant to this case. Schoeneman is not a third party beneficiary – intended or otherwise – to the policy of insurance between GICA and the Mall, *Martis v. Pekin Memorial Hosp., Inc.*, 395 Ill.App.3d 943, 917 N.E.2d 598, 606 (3rd Dist. 2009), and it makes no attempt to demonstrate that it is.

Only third parties who are direct beneficiaries have rights under a contract. *F.H. Paschen/ S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 372 Ill.App.3d 89, 97, 865 N.E.2d 228, 235 (1ST Dist. 2007). Schoeneman's only relation to the GICA/Mega Mall contract of insurance is the adventitious circumstance that GICA has refused to pay on the policy. Had that not occurred, Schoeneman would never have become involved. The inescapable reality then is that far from being an intended third party beneficiary of the formation of the GICA insurance contract, it is an unintended "beneficiary" of its breach. That is not a basis for intervention under Rule 24.

Moreover, Schoeneman makes no attempt to show that the facts of the instant case are remotely comparable to those in *Security Insurance Co. of Hartford*. Absent that identity, a

comparison between the two cases is, as *Security Insurance Co. of Hartford* stressed, a vain endeavor. *Id.* at 1380. *Compare Douglas v. City of Jeanette*, 319 U.S. 157, 166 (1943) (Jackson, J., dissenting)("Unless we are to reach judgments as did Plato's men who were chained in a cave so that they saw nothing but shadows we should consider the facts of [this] case at least as an hypothesis to test the validity of the conclusions. . . .").

In *Security Insurance Co.*, the LaSalle Street Church sued Schipporeit, the architect who had designed and built a roof for its property, which blew off in a storm. The suit was filed in the Illinois state court. Schipporeit "had no significant assets except for the Security [Insurance Company] policy," *id.* at 1380, and Schipporeit had "assigned its assets for the benefit of its creditors." *Id.* Security Insurance Company took up Schipporeit's defense in the state court under a reservation-of-rights provision in the policy and simultaneously filed its declaratory judgment action in the federal court seeking a declaration that it was not obligated to defend or indemnify Schipporeit. *Id.*

Schipporeit failed to appear in the federal case, and it "was in [sic] process of allowing a default to be entered against it." (*Reply* at 2). That would have rendered valueless any recovery LaSalle would have obtained in the state court action. Accordingly, it moved to intervene in the federal case. No claim was made that LaSalle's interest was being adequately represented by any existing party in the federal action, and there was no question that the motion to intervene was timely. *Id.* at 1380. The district court allowed LaSalle to intervene pursuant to Rule 24(a) and (b), and the Court of Appeals sustained that decision.

Acknowledging the highly, fact-specific determination involved in ruling on motions for intervention, thereby "making comparison to other cases of limited value" and "dubious worth," *id.* at 1381, the court found Judge Bauer's opinion in *Hartford Accident & Indemnity Co. v. Crider*, 58

F.R.D. 15 (N.D.Ill. 1973) applicable because "the facts in our case are identical to those" in *Crider*. There, Judge Bauer allowed the plaintiff that filed the underlying suit against the insured in state court to intervene in the case between the insured and its insurance company. *Id.* at 18.

Not only are the facts in the instant case not "identical" to those in *Security Insurance Co.*, *(Reply* at 2), they are not remotely comparable. Had LaSalle Street Church not been allowed to intervene in the federal declaratory judgment action, there would have been no one to defend against Security's claim that there was no coverage – Schipporeit was about to be defaulted – with the inevitable result that LaSalle Street Church would have had no source of payment even if it won its negligence case against Schipporeit in the state court. There is no claim that the defendants in this case may default or throw in the towel, or that the defendants are in any type of financial difficulty or without assets. Quite the contrary. They are vigorously pursuing their claims here and in the state court, and thus there is no risk – other than the risk inherent in all litigation – that Schoeneman will be left high and dry. What the court said in *Flying J, Inc.*, is instructive:

> Had the association sought to intervene earlier, its motion would doubtless (and properly) have been denied on the ground that the state's attorney general was defending the statute and that adding another defendant would simply complicate the litigation. For there was nothing to indicate that the attorney general was planning to throw the case-until he did so by failing to appeal. At that point the objection to intervention, as long as taking new evidence was not contemplated, evaporated.

578 F.3d at 572 (parenthesis in original).

Finally, Schoeneman's attempt to equate the situation in this case with that in *Security Insurance Co.*, also puts out of view the fact that in *Security Insurance* the insurance policy was the only source of payment for whatever damages the plaintiff might recover in the underlying negligence suit brought by LaSalle Street Church in the state court against its architect. Here,

13

Schoeneman is not the plaintiff in the state court case, and the insurance policy involved in the instant case is not the source of payment for some separate claim Schoeneman has against the Clark Mega Mall and the other individual defendants. Rather, unless the defendants here prevail in their suit against GICA, Schoeneman will be entitled to nothing – which is exactly the result it bargained for. In sum, Schoeneman's attempted comparison between this case and *Security Insurance Co. of Hartford* is a "venture of dubious worth." 69 F.3d at 1381.

## D.
## Permissive Intervention

We come then to the argument for permissive intervention under Rule 24(b), which provides that "the court may permit" a movant "to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention is "wholly discretionary." *Babbitt*, 214 F.3d at 949.[2] Because Schoeneman's interest in these proceedings did not arise until after they began, it would be permitted to intervene even if its presence destroyed complete diversity.[3] *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006). But Schoeneman makes no assertions as to the timeliness of its motion, and its motion must be denied for that reason alone. *Babbit*, 214 F.3d at 949. There must also be independent jurisdiction

---

[2] Since discretion denotes the absence of a hard and fast rule, *Langnes v. Green*, 282 U.S. 531, 541 (1931); *Rogers v. Loether*, 467 F.2d 1110, 1111-12 (7th Cir.1972)(Stevens, J.), on virtually identical facts, two decision makers can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir.2006)(Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable....").

[3] Given the lack of development or an analysis of the argument for intervention as of right, it is perhaps not surprising that the motion to intervene does not indicate on which side it wishes to intervene. It has only a potential contract claim against the defendants – but since there has been no beach by the defendants, such a claim might not develop – and no claim at all against GICA. If it intervened as a plaintiff, its presence would destroy complete diversity because it is an Illinois corporation.

14

over the movant's claim. *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 775 (7th Cir. 2007); *Security Insurance Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir.1995).

Additionally, the motion to intervene under Rule 24(b) should be denied because the movant does not have a claim or defense that shares a common question of law or fact with the main action. Schoeneman asserts that "[i]n this case, not only are there common questions of fact in determining the amount of loss, but there are also common questions of law in terms of whether the contract of insurance applies to this loss." (*Motion to Intervene*, at 4). Because Schoeneman does not indicate what its claim is, *see* fn. 3, there is no way to tell whether it meets this requirement. Rule 24(c) requires that a motion to intervene be accompanied by a pleading that sets out the claim for which intervention is sought. Schoeneman has not complied with this Rule, and that alone warrants denial of the motion to intervene under both Rule 24(a) and (b).

The only claim it might have would be a contract claim against the defendants, but there hasn't been any breach, since the condition precedent (recovery under the insurance policy) has not yet occurred. Hence, Schoeneman has no present claim against those with Discount Mega Mall, the party with which it contracted. (*Motion to Intervene*, Ex. 1-A). Moreover, such a claim would not involve a determination of whether the contract of insurance applied, as Schoeneman argues; it would simply be a matter of what Schoeneman was entitled to under *its* contract with the Mall. The Mall will have recovered or not from GICA, and Schoeneman will get 5% of whatever that recovery might be. That is a matter between the Mall and Schoeneman, having nothing to do with the controversy between GICA and the defendants.

The issue of damages is similar. Any amount Schoeneman is entitled to receive as payment from the defendants is contingent on what, if anything, the defendants recover from GICA, either

15

by settlement or suit. Schoeneman is entitled to 5% of that amount, whatever it may be. While Schoeneman, of course, wants the Mall to win and to recover as much as possible from GICA, whatever contractual claim Schoeneman might then have against the Mall does not share a common question of law or fact with the Mall's current claim against GICA. The former is fixed by its 5% contract with the Mall, while the latter depends upon whether GICA is obligated to indemnify the Mall under its policy of insurance – a contract to which Schoeneman is not privy.

## CONCLUSION

For the foregoing reasons, Schoeneman's motion to intervene [#113, #118] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 3/9/10