IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERAL INSURANCE COMPANY OF AMERICA, | )<br>)<br>) |
| Plaintiff, | ) No. 08 C 2787<br>) |
| vs. | )<br>) Magistrate Judge Jeffrey Cole |
| CLARK MALL. CORP. d/b/a DISCOUNT MEGA MALL CORP., MARCOS I. TAPIA, JUAN E. BELLO, JOSE L. GARCIA, LETICIA HURTADO, YOUNG S. KO, MARIANO KON, CHOONG I. KUAN, ROSA G. MADRIGAL, HILDA MENDOZA, MAN OK NO, HEE T. PARK, SUNG W. PARK, MARIA L. ROMAN, VICTOR H. VISOSO. KYUN HEE PARK, and JENNIFER PARK, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

A fire at the defendants' mall destroyed not only their property, but the merchandise of some of the vendors who had stalls there. The vendors sued the Mall and others in state court, and the defendants sought to have their insurance company, General Insurance of America ("GICA"), defend them, as well as to recover for the damage to their property. GICA rebuffed them – fraudulently insist the defendants – and eventually filed a declaratory judgment action in this court, contending that the loss was not covered under the defendants' policy. The defendants filed a five-count counterclaim and later amended it. In Count I, defendants seek a declaratory judgment that, *inter alia*, GICA is liable to pay the claim and ordering GICA to negotiate in good faith with respect to the payment of the claim. Count II is a claim for breach of contract for GICA's failure to indemnify

the defendants for losses they sustained in the fire. Count III charges GICA with unreasonable and vexatious conduct under Section 155 of the Illinois Insurance Code. Count IV is a claim under the Illinois Consumer Fraud and Deceptive Practices Act ("CFDPA"), and Count V charges common law fraud. GICA has moved to dismiss.

# I.
# BACKGROUND

## A.
### Allegations In Defendants' Counterclaim[1]

After the fire at the mall, the defendants filed a claim under their insurance policy with GICA, seeking recovery for the damages to their property and loss of business income. The defendants' allegations detail the course their claim took once it was in GICA's hands: GICA made an endless series of requests for documents (*Amended Counterclaim*, ¶¶ 16-17, 23-24, 26, 39), obtained sworn statements from employees (*Amended Counterclaim*, ¶¶ 18-19), subjected one of the defendants – Kyun Hee Park – to fifteen hours of sworn testimony over three days (*Amended Counterclaim*, ¶ 22), and interviewed defendants' accountants and public adjuster (*Amended Counterclaim*, ¶¶ 20, 25 ). It is alleged that some of the information demanded had nothing to do with the incident, including information regarding any lawsuits any of the defendants or any of their other businesses were involved in. (*Amended Counterclaim*, ¶ 23). The defendants say they complied at every turn, including submitting well over 1500 documents.

But this was merely the first year of the claimed ordeal. GICA indicated defendants' claim was being held in abeyance because the investigation was not completed. (*Amended Counterclaim*,

---

[1] A court must accept as true all well pled factual allegations and draw all reasonable inferences therefrom in favor of the non movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

2

¶ 30). GICA then required four more hours of testimony from Mr. Park. (*Amended Counterclaim*, ¶¶ 30-31). It requested still more documents, some duplicating those defendants had already provided, including those relating to businesses other than the mall where the fire occurred. (*Amended Counterclaim*, ¶ 32). Defendants continued to comply, and GICA continued to put them off and was unresponsive when defendants contacted it with questions about their claim. (*Amended Counterclaim*, ¶¶ 33-40).

The complaint alleges that GICA would not even give them an idea of how much more they had to go through before their claim would be settled one way or the other. (*Amended Counterclaim*, ¶¶ 39, 43). In the end, all GICA did was point to an exclusion for coverage with respect to the Commercial Liability Coverage portion of the policy. (*Amended Counterclaim*, ¶ 40). GICA gave defendants no explanation as to why the Commercial Property portion of the policy might not apply. (*Amended Counterclaim*, ¶ 41). The complaint alleges that this obduracy continues unabated to this day. (*Amended Counterclaim*, ¶ 43).[2]

## B.
## GICA's Motion To Dismiss

GICA argues that Count II and paragraphs (2) and (3) of the prayers for relief in Count I are duplicative and that Count II, therefore, should be dismissed.[3] It contends that Count III fails to state a claim because the parties have a *bona fide* dispute over coverage. As to Count IV, GICA submits

---

[2] Not surprisingly, discovery thus far has been acrimonious and slow. The defendants blame GICA and contend that its abusive, stonewalling tactics are a continuation of GICA's bad faith behavior that forced the defendants to sue. GICA denies any wrongdoing and blames the defendants for imprecision and overreaching in their discovery requests. This is not the place to address those issues.

[3] GICA also argues that, if its motion to amend its complaint is granted, Count I of defendants' amended counterclaim should be dismissed as duplicative – or more accurately, reflexive – of GICA's declaratory judgment complaint.

3

that defendants' claim that GICA failed to meet its obligations under the insurance policy is not cognizable under the CFDPA. Finally, GICA argues that Count V failed adequately to allege fraud in Count V.

## II.
## ANALYSIS

### A.
### The Pleading Standard For Motions to Dismiss Under Rule 12(b)(6)

Under the standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and affirmed in *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009), a complaint does not need detailed factual allegations, but it must provide the factual "grounds" of entitlement to relief; a "formulaic recitation of a cause of action's elements will not do." 550 U.S. at 555. A complaint stating only "bare legal conclusions," even under notice pleading standards, is not enough to survive a Rule 12(b)(6) motion. *Id.* at 547. It must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. *Id.* at 557. In *Iqbal*, the Supreme Court explained that a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949. Even so, "in examining the facts and matching them up with the stated legal claims, we give 'the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009).

### B.

### The Declaratory Judgment And Breach Of Contract Claims

GICA argues that a portion of the defendants' claim for declaratory relief under Count I and

its claim for breach of contract under Count II are duplicative of one another, and thus Count II must be dismissed. Essentially, GICA says that because the targeted portion of Count I seeks a ruling that it failed to perform its obligations under the insurance policy and Count II seeks monetary relief for that failure, there is no point in having both claims before the court. The argument makes sense as far as it goes, but even if the two counts *are* duplicative, there would be no reason to dismiss the count seeking money damages as opposed to the one seeking declaratory judgment – which is precisely what GICA is asking for and all that it is seeking. (*Motion to Dismiss*, at 4: "As the prayers for relief in Count II are duplicative of Count I, Count II is duplicative and should be dismissed.").

GICA relies upon, *Pelfresne v. Village of Lindenhurst*, 2005 WL 2322228 (N.D.Ill. 2005), in which the court dismissed the claim for declaratory relief as duplicative, not the claim seeking monetary relief. The idea in *Pelfresne* was that because "[t]he purposes of declaratory judgments are to clarify and settle the legal relations at issue and to terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding, . . .[w]here the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serves no useful purpose because the controversy has ripened and the anticipation and uncertainty of litigation are alleviated." 2005 WL 2322228, *6. So, if a plaintiff files a suit seeking damages caused by a defendants' unlawful conduct, there is no need for a declaratory judgment that the conduct was unlawful. *Id.* Under the case it cites, GICA is not entitled to a dismissal of Count II of the defendants' amended counterclaim.[4]

---

[4] A dismissal of the duplicative portion of Count I might have been appropriate, but GICA did not argue for that. The defendants do not disagree with the logic of *Pelfresne* or that the two counts are duplicative, but argue that the court there only dismissed the declaratory judgment count because it had already rejected the plaintiff's claim for injunctive relief. (*Defendants' Response to Plaintiff's Motion to*
(continued...)

5

## C.
## The Section 155 Claim

Section 155 of the Illinois Insurance Code allows courts to award costs and attorney's fees to an insured when an insurer's action is deemed "vexatious and unreasonable." 215 ILCS 5/155; *Medical Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir.2007). But, if the parties have a *bona fide* dispute regarding coverage – one that is "[r]eal, genuine, and not feigned" – statutory sanctions are inappropriate. *Medical Protective Co.*, 507 F.3d at 1086. GICA seeks dismissal of the Section 155 claim because, it argues, this court has already "recognized and concluded" that the parties simply have a *bona fide* coverage dispute. (*Motion to Dismiss*, at 6-7). Ignored is the context of the statement on which the Argument rests, even though the Supreme Court has warned time and again against hyper-literal parsing of and preoccupation with words surgically excised from the broader context of an opinion. *See e.g., United States v. Apfelbaum*, 445 U.S. 115, 120 n.6 (1980); *Reiter v. Sonotone*, 442 U.S. 330, 341 (1979).

Indeed the Seventh Circuit has said time and again that it is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context. *See e.g., Aurora Loan Services, Inc. v. Craddieth*, (7th Cir. 2006); *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 920 (7th Cir. 2003). Or as Judge Posner has pithily put it "[j]udges expect their pronunciamentos to be read in context. . . ." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005). *See also Penry v. Lynaugh*, 492 U.S. 302, 358 (1989)(Scalia, J., concurring and dissenting in part).

---

⁴(...continued)
*Dismiss*, at 3). That's not exactly what happened. Actually, the plaintiff in *Pelfresne* argued his declaratory judgment count was not duplicative of his damages count because he sought injunctive relief in his declaratory judgment count. The court held that plaintiff's claim for injunctive relief had already been dismissed. 2005 WL 2322228, *6. Thus, only duplicative pleadings were left in the declaratory judgment count, and the court dismissed those.

The statement GICA relies upon was made in the context of the defendants' motion for judgment on the pleadings. *General Insurance. Co. of America v. Clark Mall, Corp.*, 631 F.Supp.2d 968 (N.D.Ill. 2009). That means that based on the pleadings as they stood – specifically, the underlying counterclaim – the defendants were not entitled to a judgment that GICA acted vexatiously and unreasonably as a matter of law. Such a ruling was not intended to resolve the issue for good and all; it simply indicated that the pleadings alone were not sufficient to entitle the defendants to relief. At the time, the factual allegations detailing GICA's course of conduct with regard to the defendants' insurance claim were not before the court. Those allegations, if true, certainly paint a portrait of vexatious and unreasonable action on GICA's part sufficient to withstand a motion to dismiss.

## D.
## The CFDPA Claim

In Count IV, defendants allege that GICA violated the CFDPA by (1) "stating that it denied Discount's claims due to the action of Discount or its agents"; (2) "stating that it would pay valid claims under the Policy"; (3) "making bad faith demands for documentation of the claim; and" (4) "prolonging its refusal to honor or deny the claims at issue." (*Amended Counterclaim*, ¶¶ 69-70). They further allege that GICA intended them to rely on its obligations to pay under the policy, make document requests in good faith, and pay claims promptly. (*Amended Counterclaim*, ¶ 71). And, finally, the defendants allege that the deception occurred in the course of conduct involving trade or business, and that they suffered damages as a result. (*Amended Counterclaim*, ¶¶ 72-73). GICA says this count must be dismissed because: (1) it alleges nothing more than a failure on GICA's part to satisfy contractual obligations; (2) it does not allege any conduct that implicates consumer-protection

7

concerns or trade practices in general; and (3) it contains only conduct directed at the defendants.[5]

To state a claim under the CFDPA, a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in a course of conduct involving trade and commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deception. *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007); *Pappas v. Pella Corp.*, 363 Ill.App.3d 795, 798-799, 844 N.E.2d 995, 99 (1st Dist. 2006). Count IV's allegations to meet those requirements.

Defendant's charge that GICA promised it would pay valid claims, but then just strung them along, from September 8, 2007, through April 7, 2009, and on to the present time, requesting information and conducting interviews and obtaining sworn statements. Some of the information did not appear to have anything to do with the fire at the mall. (*Amended Counterclaim*, ¶¶ 13-39). Stringing the insureds along with the intimation that things were progressing toward a resolution when, in reality, there is no end in sight, making unreasonable and irrelevant demands, and never providing a definite answer certainly qualifies as an allegation of deception and intent that the other party rely on that deception. And, obviously, the insurance business constitutes "trade and commerce," *Fox v. Industrial Cas. Insurance. Co.*, 98 Ill.App.3d 543, 546, 424 N.E.2d 839, 842 (1st Dist. 1981) – an endeavor affected with a vital public interest. Finally, the defendants clearly allege they suffered significant economic damages as a result of GICA's conduct.

It is true that an allegation that charges nothing more than a breach of a promise, one is contractually obligated to perform, is not cognizable under the Act. In *Avery v. State Farm Mutual*

---

[5] It may be noted in this regard that GICA has vigorously resisted any discovery directed at its treatment of or dealings with of any of its other insureds, even in fire cases.

8

*Auto. Insurance Co.*, 216 Ill.2d 100, 835 N.E.2d 801 (2005), the Illinois Supreme Court explained:

> A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act. ... What plaintiff calls "consumer fraud" or "deception" is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. We believe that a "deceptive act or practice" involves more than the mere fact that a defendant promised something and then failed to do it. That type of "misrepresentation" occurs every time a defendant breaches a contract.

216 Ill.2d at 169, 835 N.E.2d at 844 (quotation omitted).

A breach of contract occurs when the other side candidly says, "I'm not performing." When, however, the non performance is concealed under a facade of compliance with one's contractual obligations and a series of dilatory, deceptive and punitive maneuvers designed to mask that non-performance, a very different calculus is presented. That is what the counterclaim in essence alleges occurred here. It depicts not merely an inefficient failure to follow through on obligations GICA had under the policy, but an insurance company that was doing all in its power to wear down the insureds and to put off indefinitely a frank decision regarding coverage and the reasons for the denial. The allegations can be read as charging an attempt by GICA to set up the insured for a claim on non-cooperation, thereby enabling GICA to claim that it was the insured who breached the contract. The insureds were promised their claims would be assessed in a reasonable and honest manner. But when they finally had a claim, what they got, according to the counter claim, was the proverbial "run around."[6] What the Supreme Court said long ago in another context has application

---

[6] Fire or arson investigations can be arduous affairs, *Norman v. American Nat. Fire Insurance Co.*, 198 Ill.App.3d 269, 291, 555 N.E.2d 1087, 1101 (5th Dist. 1990); *Harper v. Auto-Owners Insurance Co.*, 138 (continued...)

here: "Honesty of purpose prompts frankness of statement... concealment is indicative of fraud." *Crosby v. Buchanan*, 90 U.S. 420, 457 (1875). *See also Merchants National Bank of Aurora v. Frazier*, 329 Ill.App. 191, 206 (2d Dist. 1946) ("Imperfect information will be regarded as equivalent to concealment.").

GICA contends that cases involving CFDPA claims of this nature – insurance companies browbeating their insureds – are only cognizable under the Act when action directed at the general public is alleged. *See W.E. O'Neil Const. Co. v. National Union Fire Insurance. Co. of Pittsburgh, Pa.*, 721 F.Supp. 984, 1001-1002 (N.D.Ill. 1989); *Barr Co. v. Safeco Insurance. Co. of America*, 583 F.Supp. 248, 258 (N.D.Ill. 1984). Neither case involved allegations of conduct directed at the marketplace, but in both instances, the court found that those allegations, while sufficient to state a claim, may not have been necessary. *W.E. O'Neil Const. Co.*, 721 F.Supp. at 1001-1002 (finding no pubic injury requirement, but holding that, "even if there is such a public injury or effect on consumers requirement, [plaintiff] has met this requirement."); *Barr Co.*, 583 F.Supp. at 258 (court found that plaintiff alleged more than an "isolated breach of contract," but held that "[i]n any event, insurance contracts are matters of public policy.").

More importantly, both cases were decided before the Act was amended in 1990 to specifically provide that "[p]roof of a public injury, a pattern, or an effect on consumers generally

---

[6](...continued)
F.R.D. 655, 668 (S.d.Ind. 1991); *Serafin v. Motorists insurance co.*, 33 Pa. D. & C. 3d 615, 616-617, 1985 WL 5279, 1 (Pa.Com.Pl. 1985), and thus, merely because the investigation was lengthy and involved demands for information that may have appeared to be out of the ordinary is not decisive of whether there has been misconduct by GICA. Because these kinds of investigations differ from other kinds, that thus far I have denied the defendants' very broad-based discovery requests that seek information about GICA's conduct in connection with every kind of investigation it has conducted over a very extensive period of time. Conversely, seemingly excessive demands for information, even in fire investigations, can well be part of a scheme to defraud.

shall not be required," no doubt in response to cases that had imposed such a requirement. *Johnston v. Anchor Organization for Health Maintenance*, 250 Ill.App.3d 393, 396, 621 N.E.2d 137, 140 (1st Dist. 1993); *Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc.*, 240 Ill.App.3d 360, 367-68, 608 N.E.2d 178, 182-83 (1st Dist. 1992). The amendment of the Act clarified that the legislature intended to provide relief even for plaintiffs who could prove only a single deceptive act. *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996); *Rubin v. Marshall Field & Co.*, 232 Ill.App.3d 522, 532, 597 N.E.2d 688, 694 (1st Dist. 1992). This was in keeping with the Act's broad remedial purpose and correspondingly broad applicability. *Scott v. Association for Childbirth at Home, International*, 88 Ill.2d 279, 284, 430 N.E.2d 1012, 1015 (1981); *Elder v. Coronet Insurance Co.*, 201 Ill.App.3d 733, 748, 558 N.E.2d 1312, 1319 (1st Dist. 1990). Clearly, the fact that the defendants' allegations pertain only to conduct directed at them does not require dismissal of their CFDPA claim. It seems that the motion to dismiss seeks to impose a requirement that was done away with – except in cases involving motor vehicle dealers – nearly twenty years ago.

GICA's argument that the allegations fail because they do not "implicate consumer concerns" is singularly unpersuasive. Even in cases not involving insurance, courts have found a single, isolated act of consumer fraud does, indeed, implicate consumer concerns. *See Bank One Milwaukee v. Sanchez*, 336 Ill.App.3d 319, 320, 783 N.E.2d 217, 219 (2nd Dist. 2003). If the practices alleged in the amended counterclaim do not implicate consumer concerns, it is difficult to imagine what does. Illinois courts, like courts throughout the nation, have found that the insurance industry is a necessity affected with a vital public interest. *Lincoln Towers insurance Agency, Inc. v. Boozell*, 291 Ill.App.3d 965, 969 684 N.E.2d 900, 903 (1st Dist. 1997).

But the implication of consumer concerns is not really a pleading requirement in a case such

as this, where the injured party is a consumer of the accused's product. It is only a plaintiff who is not a consumer who must allege a "consumer nexus" or that the conduct "implicates consumer concerns." *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 868 (7th Cir. 1999); *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir.1996); *Peter J. Hartmann Co. v. Capital Bank and Trust Co.*, 296 Ill.App.3d 593, 604, 694 N.E.2d 1108, 1117 (1st Dist. 1998); *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill.App.3d 452, 458, 654 N.E.2d 1109, 1115 (2nd Dist. 1995). Once again, GICA is attempting to engraft pleading requirements into the Act that are not required by the law.

The case on which GICA relies almost exclusively to support the requirements it seeks to impose on CFDPA pleading differs significantly from the situation here. In *Song v. PIL, L.L.C.*, 640 F.Supp.2d 1011 (N.D.Ill. 2009), the plaintiff was not a consumer, and the court found that the parties' contract:

> contradicts Song's allegation that he is a consumer, and PIL's alleged misconduct does not implicate consumer-protection concerns. The terms of the [contract] which labels Song the "Seller" and PIL the "Purchaser," demonstrate that Song did not purchase any services from PIL. Rather, PIL purchased Song's assets.

*Id.* at 1018-19. Because the plaintiff was not a consumer, he had to allege conduct that implicated consumer concerns. As consumers, insureds have no such obligation.

GICA also contends that allegations under the CFDPA must be plead with the same particularity as a fraud claim. (*Motion to Dismiss*, at 7). The argument misses the mark on three counts. First, it relies on Illinois pleading requirements, which do not control here. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc.*, 536 F.3d 663, 670-72 (7th Cir. 2008). Second, it is completely undeveloped; a single sentence without any citation to

12

applicable case law. Consequently, the argument is waived. *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009); *White Eagle Co-opinion Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir. 2009); *Fabriko Acquisition Corporation v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008). The Seventh Circuit has repeatedly reminded both bench and bar that it is not the job of the court to develop arguments for parties. *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008). Third, as the CFDPA covers not only consumer fraud but deceptive or unfair practices, the particularity requirements of Rule 9(b) don't necessarily apply. *Financing Services, Inc.*, 536 F.3d at 670.

## E.
## The Fraud Claim

Finally, GICA seeks dismissal of the defendants' fraud claim in Count V of their amended Counterclaim, arguing that the defendants have not properly alleged the elements of fraud. GICA contends that the defendants' allegations are nothing more than conclusory recitations of the elements: "(1) false statements of material fact; (2) known or believed to be false by the party making them; (3) intended to induce the other party to act; (4) acted upon by the party in reliance upon the truth of the representations; and (5) damaging to the other party as a result of such reliance." (*Motion to Dismiss*, at 11 (quoting *Mack v. Plaza DeWitt Ltd. Partnership*, 137 Ill.App.3d 343, 350, 484 N.E.2d 90 (1st Dist. 1985)). GICA relies on *Weis v. State Farm Mut. Auto Insurance*, 333 Ill.App.3d 402, 406 (2nd Dist. 2002) for the proposition that merely alleging facts and legal conclusions is insufficient to state a fraud claim. (*Motion to Dismiss*, at 11). But, of course, Illinois's fact pleading rules do not apply in the federal court. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc.*, 536 F.3d 663, 670-72 (7th Cir. 2008); *Christensen v. County of Boone, IL*, 483 F.3d 454, 466 (7th Cir. 2007). As noted, under *Twombly*

13

and *Iqbal*, the idea is to state enough facts to present a plausible claim for relief. Where the claim involves fraud, more is required.

Under federal pleading rules, the circumstances constituting the fraud must be pleaded "with particularity." Fed.R.Civ.P. 9(b); *see also Crichton v. Golden Rule Insurance. Co.*, 576 F.3d 392, 395 (7th Cir. 2009). That means the allegations must provide the "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators*, 536 F.3d at 668.

Defendants allege a series of communications from GICA regarding their submissions to the carrier, the progress of GICA's consideration of the claim and what was needed to conclude GICA's consideration of the claim. But, it might be argued that these were, in effect, tacit assurances that the claim was being honestly assessed and that compliance with GICA's demands would result in a decision fairly and honestly reached, rather than specific or explicit misstatements of fact. A demand for documents or for sworn statements, even if made in bad faith (*Amended Counterclaim*, ¶ 75(b)), perhaps is not a misstatement of material fact as that term is used in Illinois cases. The same may be said of GICA "prolonging its refusal to honor or deny the claims at issue." (*Amended Counterclaim*, ¶ 75(c)). But this does not mean that they are insulated from liability under a fraud theory. *See infra* at 16. The defendants' allegation that GICA stated it would pay valid claims (*Amended Counterclaim*, ¶ 75(a)) fits more comfortably into the traditional mold of a misrepresentation of material fact. And it is sufficient to meet the requirement that the content of the misrepresentation be alleged.

But there are other problems. GICA's argument begins with the "who" – it complains that

14

the amended counterclaim fails to identify who made the alleged false statements. (*Motion to Dismiss*, at 11). The defendants just generally allege that GICA made the misrepresentations. Moreover, they don't bother to respond to GICA's argument. (*Defendants' Response to Plaintiff's Motion to Dismiss*, at10-11). The failure to identify the individual or individuals at GICA who made the misrepresentations dooms the defendants' fraud count. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007);*Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). Beyond that, there is no allegation of when the misrepresentation was made; at the very least, some general time frame must be provided. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 632 (7th Cir. 2001). Accordingly, Count V must be dismissed without prejudice. The plaintiff may replead within 21 days.

Should the defendants cure these deficiencies, a word about the nature of the fraud the defendants are hoping to allege and the manner in which Illinois law looks at such allegations are warranted. GICA argues that the defendants' fraud count is nothing more than a breach of contract, which is not actionable in Illinois as fraud. Generally, a misrepresentation of intention to perform future conduct, even if made without a present intention to perform, does not constitute fraud. *Association Ben. Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841 (7th Cir. 2007); *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 168, 545 N.E.2d 672, 682-683 (1989). However, while promissory fraud involving a false statement of intent regarding future conduct, is generally not actionable under Illinois law, if the plaintiff also proves that an act was a part of a scheme to defraud, the plaintiff may maintain an action for fraud and is not limited to an action for breach of contract. *Association Ben. Services, Inc. v. Caremark RX, Inc.*, 493 F.3d at 853.

15

To state the exception is often easier than to apply it. Indeed, the so-called exception tends to swallow the rule. *Lovejoy Electronics, Inc. v. O'Berto*, 873 F.2d 1001, 1004 (7th Cir. 1989)(citing *Stamatakis Industries, Inc. v. King*, 165 Ill.App.3d 879, 882, 520 N.E.2d 770, 772 (1st Dist. 1987)). It would seem that the false promise – like agreeing to an obligation under a contract with no intent to perform – would always be a component of the scheme employed to accomplish the fraud. There is little guidance as to what exactly constitutes a scheme. *See Stamatakis*, 165 Ill.App.3d at 882, 520 N.E.2d at 772. It is rarely defined, and when it is, there is nothing to differentiate it from any occasion where one goes into a contract with the intention not to perform. *Concord Industries, Inc. v. Harvel Industries Corp.*, 122 Ill.App.3d 845, 849-850, 462 N.E.2d 1252 (1st Dist.1984) illustrates the point: "Where a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where that other party relies upon it to his detriment, the false promise will be considered an intended scheme to defraud the victim and will be actionable."

Here, the defendants allege that GICA promised to pay valid claims, but had no intention to do so. But more than that is charged. There are a series of acts alleged designed to effectuate an overarching scheme to collect premiums without having to pay claims and with the intent not fairly to consider those claims. The defendants relied on that promise, and GICA reaped their premium payments. (*Amended Counterclaim*, ¶¶ 75-80). This certainly seems like a good deal more than a simple breach of contract, and cases support that conclusion. *See Old Republic Insurance Co. v. Ness, Motley, Loadholt, Richardson & Poole*, 2005 WL 991909 *3 (N.D.Ill. 2005); *Glazewski v. Coronet Insurance Co.*, 108 Ill.2d 243, 483 N.E.2d 1263, 1266 (1985). But, for now, Count V is dismissed without prejudice.

## CONCLUSION

The Motion to Dismiss [#84] is DENIED as to Counts I - IV, and GRANTED as to Count V without prejudice. The Defendants/Counter-Plaintiffs shall have 21 days to replead Count V.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 3/30/10