IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERAL INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLARK MALL CORP. d/b/a DISCOUNT MEGA MALL CORP., MARCOS I. TAPIA, JUAN E. BELLO, JOSE L. GARCIA, LETICIA HURTADO, YOUNG S. KO, MARIANO KON, CHOONG I. KUAN, ROSA G. MADRIGAL, HILDA MENDOZA, MAN OK NO, HEE T. PARK, SUNG W. PARK, MARIA L. ROMAN, VICTOR H. VISOSO. KYUN HEE PARK, and JENNIFER PARK,<br><br>Defendants. | No. 08 C 2787<br><br>Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

As part of the fall out from a fire at their discount mall, subsequent litigation in state court, a dispute over insurance coverage, and a declaratory judgment action their insurance company, General Insurance Company of America ("GICA"), has filed against them, the defendants have brought a counterclaim for fraud against GICA. Basically, they charge that GICA issued them an insurance policy it had no intention of honoring. It's one of several counts against the insurance company, but the only one at issue here. GICA moves to dismiss it because it doesn't pass muster under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct.

1937 (2009).[1]

*Twombly* and *Iqbal* sounded the death knell for the rote-recitation pleading that prevailed under *Conley v. Gibson*. *Twombly* retired *Conley*'s rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," saying that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. A complaint need not provide detailed factual allegations, but must amount to "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 555; *Iqbal*, 129 S.Ct. at 1949. And it must contain sufficient factual matter to "'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). After review of the defendants' allegations and GICA's argument, it must be concluded that the fraud count is sufficient to withstand a motion to dismiss.

GICA first argues that the misrepresentations the defendants allege it made were nothing more than the terms of the policy it issued to the defendants. When these are coupled with the defendants' claims that GICA and its officers were aware they would not investigate and pay defendants' claim in a timely manner, defendants' allegations are nothing more than a formulaic recitation of the elements of a fraud clam, which is insufficient under *Twombly* and *Iqbal*. Second, GICA contends that the defendants' claim that GICA had no intention of honoring the policy it issued to the defendants is an implausible, wild accusation, which also disqualifies it under the recent

---

[1] A discussion of defendants' entire counterclaim can be found at *General Ins. Co. of America v. Clark Mall Corp.*, 2010 WL 1286076 (N.D.Ill. 2010), and the history of this contentious litigation can be found there or at *General Ins. Co. of America v. Clark Mall, Corp.*, 631 F.Supp.2d 968 (N.D.Ill. 2009).

Supreme Court precedent. Such allegations have survived motions to dismiss (at least under *Conley*). *See e.g., Old Republic Insurance Co. v. Ness, Motley, Loadholt, Richardson & Poole*, 2005 WL 991909 at 3-5 (N.D.Ill. 2005).

As for GICA's first argument, the terms of the policy *are* the alleged misrepresentations, of course, because that's the defendants' claim: that GICA said it would do things it never had any intention of doing. And stating the offending misrepresentations is part and parcel of any cause of action for fraud. *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 766 (7th Cir. 2010). But there is more to the complaint than that. In paragraph 87, the fraud count summarizes what was called "a series of acts alleged designed to effectuate an overarching scheme to collect premiums without having to pay claims and with the intent not fairly to consider those claims" in *General Ins. Co. of America v. Clark Mall Corp.*, 2010 WL 1286076, *9. These acts are detailed further in paragraphs 22-43, and depict a far-reaching and burdensome investigation into defendants' claim that went beyond the incident itself. They include one document request after another, which covered not just the mall where the fire occurred, but defendants' other business interests as well. Interrogatories were directed to the defendants' accountants. There were repeated depositions of Mr. Park, one totaling fifteen hours and spanning three days, another lasting four hours. When the defendants made inquiries into the progress of their claim, GICA was unresponsive. The process stretched for over a year-and-a-half without any determination on the defendants' claim from GICA – not until GICA filed a declaratory judgment action, anyway.

These additional allegations provide the answer to GICA's criticism that the defendants haven't pled anything that demonstrates GICA had a fraudulent intent. Rule 9(b), Federal Rules of Civil Procedure, specifically allows mental condition or intent to be averred generally. At the same

3

time, the complaint must afford a basis for believing that plaintiffs could prove scienter. *Tricontinental Industries, Ltd. v. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007); *In re Healthcare Compare Corp. Securities Litigation*, 75 F.3d 276, 281 (7th Cir. 1996). The defendants' allegations are sufficient to do that. Fraudulent intent cannot be itemized like item numbers in a catalog. If the plaintiff's tacit argument is right, there would seldom, if ever, be a successful complaint alleging fraudulent intent because the fraud would have been so obvious as to have been doomed from the start.

"[W]hile objective facts may be proved directly, the state of a man's mind must be inferred from the things he says or does. ...[C]ourts and juries every day pass upon knowledge, belief and intent-the state of men's minds-having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred." *American Communications Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 411 (1950). Where mental state is in issue, it is to be proved "by the outward manifestations of state of mind." *Id.* Accordingly, circumstances are all a complaint can point to.

The conduct that occurred after the policy was issued and on which the complaint relies might be "hindsight" – as GICA complains – but that would be the conduct by which GICA avoided its obligations under the policy. As indicated in the opinion on GICA's previous motion to dismiss defendants' counterclaim, the allegations regarding that conduct can be interpreted as depicting a:

> series of dilatory, deceptive and punitive maneuvers designed to mask that non performance..... [They] depict[] not merely an inefficient failure to follow through on obligations GICA had under the policy, but an insurance company that was doing all in its power to wear down the insureds and to put off indefinitely a frank decision regarding coverage and the reasons for the denial. The allegations can be read as charging an attempt by GICA to set up the insured for a claim on non-cooperation, thereby enabling GICA to claim that it was the insured who breached the contract.

The insureds were promised their claims would be assessed in a reasonable and honest manner. But when they finally had a claim, what they got, according to the counter claim, was the proverbial "run around." 2010 WL 1286076, *5.

Now, as was noted in the opinion, a fire investigation can be a drawn out affair. At the same time, however, as was also noted, the type of ordeal depicted in the counterclaim arguably presents circumstances on which it can plausibly be concluded that the defendant committed the fraud alleged. 2010 WL 1286076, *5 n.6. Proof, of course, must come later. That's when the defendants will have to "show" that fraud "was GICA's intention when it issued the policy" – not now, as GICA seems to demand. (*GICA's Motion to Dismiss*, at 8).

GICA's second argument attacks the plausibility of the fraud claim, relying principally on *Iqbal*. In *Iqbal*, the complaint alleged that the FBI arrested and detained thousands of Muslim men as part of its investigation of the events of September 11 and held them in highly restrictive conditions of confinement until they were "cleared," purposefully designating these individuals as being of "high interest" because of their race, religion, or national origin. *Iqbal*, 129 S.Ct. at 1951. But the Court found that, on the facts alleged, the charged conduct was likely lawful and justified by the nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts. *Id.* Here, however, there are no allegations in the counterclaim that undermine the plausibility of the defendants' fraud claim. There is nothing that suggests the fire was of suspicious origin, or provides a likely reason for GICA's seemingly singling out the defendants' claim for such heightened scrutiny and extensive investigation. As it stands, the defendants' claim is, at least, plausible.

GICA also submits that the counterclaim is implausible because it fails to allege GICA's motive for defrauding the defendants. For the proposition that motive must be pled – even though

5

it is not an element of a claim for fraud or perhaps any other common law claim – GICA relies on *DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir.1990) and *Tricontinental Industries*. The defendants' contention overlooks the fundamental proposition that "[j]udges expect their pronunciamentos to be read in context. . . ." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.). *See also East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705 (7th Cir. 2005)("Although we stated in *Panoramic* that damages would not adequately remedy a permanent loss of jobs... that language must be read in context."). "But it is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context." *Aurora Loan Services, Inc. v. Craddieth*, (7th Cir. 2006). As Justice Scalia has pointedly put it, "[o]ne must read cases, however, not in a vacuum, but in light of their facts...." *Penry v. Lynaugh*, 492 U.S. 302, 358 (1989)(Scalia, J., concurring in part and dissenting in part).

What the Ninth Circuit said in *United States v. Corey*, 232 F.3d 1132, 1166 (9th Cir. 2000), could well describe the defendants' reliance on *DiLeo* and *Tricontinental Industries*: "The [defendant] quotes selectively from these cases but, when read in context, the statements have little to do with our case." *Tricontinental Industries* stated that "[t]his court has stated that, with respect to allegations of scienter in cases of fraud *against accountants*, the complaint should identify what the accountant had to gain by covering up (or being complicit in) the fraud of their clients." (Emphasis supplied). This case does not involve a claim for aiding and abetting securities fraud brought against an accounting firm.

In *DiLeo*, the complaint alleged that the accounting firm aided and abetted a bank's purported securities fraud – essentially, the plaintiff charged that the bank failed to write off bad loans quickly

6

enough – by certifying financial statements. 901 F.2d at 626. But the court was troubled by the fact that the complaint failed to even allege that the accounting firm knew that particular loans had gone bad and could not be collected. Moreover, the court stated that there was nothing to indicate that the accounting firm had "thrown in its lot" with the bank; hence, it had nothing to gain from the fraud. The fact that it charged the bank fees for its services was insufficient to suggest a motive, the court held. *Id.* at 626, 629.

Nothing in either *DiLeo* or *Tricontinental Industries* remotely suggests that in fraud cases motive must be pled. Where there is not some arguable motive either pled or apparent, there is a certain implausibility about contending that an accounting firm had aided and abetted a securities fraud violation from which it did not receive any of the spoils.[2] Pleading motive provides factual support for the intent that must be pled and ultimately proved to make out an aiding and abetting claim. No comparable requirement exists when an insurance carrier is accused of fraud based upon certain conduct that is actually pled in the complaint. In that context, as in cases involving actions for bad faith failure to settle, which does not require that motive be pled,[3] the motive is obvious. It is profit. And, at least in this case, the carrier had more to gain than just premiums as it argues. (*GICA's Motion to Dismiss*, at 8). It also would keep over $4 million – the amount of the insurance claim – in its coffers. That is motive enough and requiring it to have been pled would have added

---

[2] The absence of motive is as much a species of circumstantial evidence as is the presence of motive. In one context, the circumstantial evidence is offered in favor of the party against whom wrongdoing is claimed, while in the other, it is offered in favor of the party who claims to have been wronged.

[3] To sustain a cause of action for bad faith, the plaintiff must allege that: (1) the duty to settle arose; (2) the insurer breached the duty; and (3) the breach caused injury to the insured. *SwedishAmerican Hosp. Ass'n of Rockford v. Illinois State Medical Inter-Insurance. Exchange,* 395 Ill.App.3d 80, 103, 916 N.E.2d 80, 99 (2nd Dist. 2009).

7

nothing to the question of plausibility under *Twombly* and *Iqbal*.

GICA also relies on *Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, 2005 WL 736217 (S.D.N.Y. 2005). But nothing in that case requires that motive be pled in a fraud case. In fact, the court's explanation of its decision demonstrates conclusively the idleness of the defendants' contention that motive must be pled in fraud cases. In *Teradyne*, the district court, relying on Second Circuit precedent, held that Rule 9(b), Federal Rules of Civil Procedure, was "intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit..., the relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id.* at * 2. (Internal quotations marks omitted).

Consequently, in the Second Circuit, a complaint for fraud must "allege facts that give rise to a strong inference of fraudulent intent." A plaintiff can establish the requisite "strong inference of fraudulent intent" either by demonstrating "that defendants had both motive and opportunity to commit fraud, *or* [ ] by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 2 (*citing Kalnit v. Eichler,* 264 F.3d 131, 138-39 (2d Cir. 2001))(Emphasis supplied)(brackets in original). The district judge concluded that the complaint ran afoul of Rule 9(b) because it failed to allege scienter "by alleging motive and opportunity to commit fraud *or* specific facts giving rise to strong circumstantial evidence of conscious misbehavior or recklessness." 2005 WL 736217, *3. (Emphasis supplied).

Properly read, *Teradyne* plainly does not require that motive be pled in fraud cases. It simply recognizes that motive is a species of circumstantial evidence, *cf. Grossard v. J.P. Morgan Chase*

8

& Co.*, 2010 WL 2911619 at 1 (11th Cir. 2010); *In re Centerline Holding Co. Securities Litigation*, 2010 WL 2303312 at *2 (2nd Cir. 2010), the existence of which can give rise to the strong inference of fraudulent intent which must be pled to satisfy Rule 9(b). It is not, however, something that must be pled in every fraud case and the absence of which requires dismissal of a complaint. That much is obvious not only from the evidentiary significance of evidence of motive, but from the court's disjunctive phrasing which allows intent to be sufficiently pled by alleging either motive *or* facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Both are plainly not required. As Wigmore put it in explaining the evidentiary significance of motive evidence: "[m]otive is always relevant, but never essential." Wigmore, Evidence, §118 (3rd ed. 1940).[4] The same is true in the context of pleading fraud.

In the instant case, the defendants have adequately alleged facts that, if true and if otherwise not satisfactorily and persuasively explained, might provide circumstantial evidence that GICA had no intention of honoring its policy. Pleading the facts from which motive could be argued would simply add to the alleged facts that have already been found adequate.

---

[4] It should be noted that the district court's opinion in *Hampshire Equity Partners* was affirmed by the Second Circuit, but not on the grounds that plaintiff had failed to allege motive. *Hampshire Equity Partners II, L.P. v. Teradyne, Inc,*. 159 Fed. Appx. 317 (2nd Cir. 2005). The appellate court said that the alleged misrepresentations were "largely in the nature of opinion or puffery incapable of being proved true or false," and were "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Id.* at 317-18. It did not address the district court's ruling on scienter under Rule 9(b). *Id.* at 318.

9

## CONCLUSION

For the foregoing reasons, GICA's motion to dismiss Count V of the defendants' counterclaim [#153] is DENIED.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 9/20/10