## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | No.  08 C 2787 |
| vs. | ) ) ) | Magistrate Judge Jeffrey Cole |
| CLARK MALL. CORP. d/b/a DISCOUNT MEGA MALL CORP., MARCOS I. TAPIA, JUAN E. BELLO, JOSE L. GARCIA, LETICIA HURTADO, YOUNG S. KO, MARIANO KON, CHOONG I. KUAN, ROSA G. MADRIGAL, HILDA MENDOZA, MAN OK NO, HEE T. PARK, SUNG W. PARK, MARIA L. ROMAN, VICTOR H. VISOSO. KYUN HEE PARK, and JENNIFER PARK, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER ON MOTION FOR RECONSIDERATION

### INTRODUCTION

General Insurance Corporation of America ("GICA") has moved, for a second time, for reconsideration of the April 16, 2009 memorandum opinion granting the defendant insureds' motion for judgment on the pleadings on the issue of GICA's duty to defend the defendants in the underlying state court action.[1] Contrary to all of the decided cases, GICA had argued that its obligation to defend the insureds in the underlying state court case was not to be determined by

---

[1] GICA says it is moving under Fed.R.Civ.P. 60(b), but fails to indicate which of the six subsections of that rule is applicable. Judging from the arguments that are advanced, it would seem that it has 60(b)(2) and/or 60(b)(6) in mind, as it relies on the Seventh Circuit's decision dismissing its appeal of the April 2009 memorandum opinion and supposedly new evidence. In any event, I can revisit and revise my decision at any time under Rule 54(b), as it did not dispose of all of the claims of all the parties.

resort to the complaint in the underlying case, but by resort to its declaratory judgment complaint in the instant case, the allegations of which had to be taken as true. The argument was based on a series of cases from the Illinois appellate Court then held that an insurer could offer "extrinsic evidence" in order to negate a claimed obligation to defend. Although it was not quite argued this way, inherent in the argument was the contention that the allegations in the declaratory judgment complaint somehow satisfied the Illinois state cases that had allowed extrinsic evidence to be used to negate a duty to defend. It was never explained how acceptance of the allegations as true was the same as extrinsic evidence within the meaning of the Illinois Appellate Court cases. Nor was it ever explained how those cases had anything to do with the operation of Rule 12(c) in the federal court.

The April 2009 memorandum opinion concluded that the pleadings in the underlying case did not show that it was clear and free from doubt that Exclusion 2(j) of the insurance policy the defendants have with GICA precluded coverage and that the allegations in the complaint in this court effectively did not count. *General Insurance Co. of America v. Clark Mall*, 631 F.Supp.2d 968 (N.D.Ill. 2011). GICA filed an interlocutory appeal pursuant to Rule 54 (b). The Seventh Circuit dismissed the appeal for lack of jurisdiction. *General Insurance Co. of America v. Clark Mall*, 644 F.3d 375 (7th Cir. 2011).

Relying on a snippet of the Seventh Circuit's opinion, removed from the informing context of the balance of the opinion, GICA now argues that the Seventh Circuit held that the allegations in its declaratory judgment complaint must be taken as true and effectively trump the allegations in the underlying complaint in the state court. So, along with a reversal of the April 2009 order, GICA asks – also for a second time – for leave to file an amended declaratory judgment complaint, the allegations of which purportedly negate an obligation to defend under the care, custody or control

exclusion of the GICA insurance policy. As we shall see, the argument for reconsideration is not supported by the Seventh Circuit's opinion in *Clark Mall*, is violative of the basic rules governing motions for reconsideration, and ultimately rests on a *non sequitur*.

## ANALYSIS

### A.

The Seventh Circuit read the memorandum opinion as "oddly *requir[ing]*" GICA to come forward with evidence at the pleading stage in response to the insureds' motion for judgment on the pleadings under Fed.R.Civ.P. 12(c). It was apparently the court's view that the memorandum opinion's "requirement" that GICA produce evidence was based on a series of Illinois Appellate Court cases that allowed (but did not require) an insurance carrier, in response to a motion for judgment on the pleadings, to offer extrinsic "evidence" showing that it had no obligation to defend. But, Illinois insurance law, the court held, could not trump the operation of the Federal Rules of Civil Procedure. Here are the relevant portions of the Seventh Circuit's decision:

> On the merits this appeal presents the following question of Illinois insurance law: Is an insurer's duty to defend determined solely by reference to the allegations in the underlying complaint, or may the insurer present evidence to establish that the loss alleged in the complaint is not covered under its policy? Decisions from the Illinois Appellate Court hold that although the duty to defend is ordinarily determined by examining the allegations of the underlying complaint, when an insurer seeks a declaratory judgment on the issue of coverage, it may present evidence to demonstrate that its policy does not cover the loss in question. *See, e.g., Am. Econ. Insurance Co. v. Holabird & Root,* 382 Ill.App.3d 1017, 320 Ill.Dec. 97, 886 N.E.2d 1166, 1175–78 (Ill.App.Ct.2008); *Fid. & Cas. Co. v. Envirodyne Eng'rs, Inc.,* 122 Ill.App.3d 301, 77 Ill.Dec. 848, 461 N.E.2d 471, 473–74 (Ill.App.Ct.1983). In its recent decision in *Pekin Insurance Co. v. Wilson,* 237 Ill.2d 446, 341 Ill.Dec. 497, 930 N.E.2d 1011, 1019–21 (Ill.2010), the Illinois Supreme Court cited this line of cases with approval.

> The magistrate judge noted these cases but oddly required General Insurance to present evidence on the duty-to-defend question at the pleadings stage in response to the defendants' Rule 12(c) motion for judgment on the pleadings. It is not

3

surprising, then, that General Insurance asked the court to enter its order as a final judgment to set up an immediate appeal. Under Rule 12(d) of the Federal Rules of Civil Procedure, a motion for judgment on the pleadings must be treated as a motion for summary judgment *if* matters outside the pleadings are submitted. Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). But this does not mean that a party opposing a Rule 12(c) motion for judgment on the pleadings *must* submit evidence in order to avoid entry of judgment against it. And that is precisely what the court required General Insurance to do.

It is true that duty-to-defend questions in insurance-coverage disputes can sometimes be resolved at the pleadings stage on a Rule 12(c) motion for judgment on the pleadings. *See, e.g., Nautilus Insurance. Co. v. 1452–4 N. Milwaukee Ave., LLC,* 562 F.3d 818, 822–24 (7th Cir.2009). But not always. Illinois insurance law does not alter the normal operation of the Federal Rules of Civil Procedure, although the magistrate judge seemed to think that it does.

644 F.3d at 378 (emphasis in original).

That it appeared to the Court of Appeals that the memorandum opinion ignored Rule 12(c) (and the cases construing it, which were cited in the opinion, 631 F.Supp.2d at 972), and "require[d]" that GICA produce evidence in opposition to the insureds' motion may have been the result of GICA's brief, which unfortunately ignored all but the last two pages of the memorandum opinion, citing only to pages 16 and 17 of the 17-page opinion. (*Brief of Plaintiff-Appellant*, at 15, 23)). This sort of presentation can have pernicious results, as Judge Easterbrook has noted. *Cf., Durgins v. City of East St. Louis, Illinois*, 272 F.3d 841, 844-45 (7th Cir. 2001)(parties' briefs misled the Court of Appeals into finding it had no jurisdiction). Perhaps it was inexactness in the phrasing of the memorandum opinion or in its organizational structure. *Cf., Rodriguez v. Chandler*, 492 F.3d 863 (7th Cir. 2007)("Our original opinions' failure to keep these subjects distinct may have influenced the parties' briefing choices on appeal."); *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)(*en banc*)("Nor have we always been consistent in articulating and applying the inquiries each

4

question represents.").

In any event, it cannot be too strongly stressed that nothing in the memorandum opinion granting the defendants' Rule 12(c) motion or in this opinion was or is intended to *require* GICA to submit "evidence" in order to defeat a Rule 12(c) motion or to subordinate the operation of Rule 12(c) to Illinois insurance law. We turn to GICA's arguments, mindful of and guided by the opinion of the Court of Appeals.

**B**.

In response to the insureds' Rule 12(c) motion, GICA did not argue that the allegations of the underlying complaint demonstrated it had no duty to defend. Instead, it relied on the allegations in its declaratory judgment complaint to support its position. (Dkt. # 18, at 4-6).[2] GICA argued that those allegations had to be taken as true and were enough to defeat the Rule 12(c) motion. The memorandum opinion concluded that, given the allegations *in the underlying complaint* in the state court and the fact that GICA paid them no mind in its brief, GICA had failed to demonstrate that it was clear and free from doubt that exclusion 2(j) of the insurance policy precluded coverage. 631 F.Supp.2d at 972-977.

There was no mention of evidence in the discussion, nor any demand for its production, contrary to GICA's position here and in the Court of Appeals (*Brief of Plaintiff-Appellant*, at 15-16, 19-22), until well into the memorandum opinion. And that reference was solely *in response* to *GICA's brief*, and not because of uncertainty about Rule 12(c). *See* 631 F.Supp.2d at 977.

---

[2] Throughout its responsive brief, GICA referred to the complaint in the sate court proceeding as "Underlying Complaint" and to its own declaratory judgment pleading as "Complaint."

In its brief in response to the insureds' Rule 12(c) motion in this court, GICA argued, much as it continues to do in the current motion, that "where the insurer files a declaratory judgment action seeking to determine its duty to defend, it may rely on facts extrinsic to the underlying complaint as the basis for denying coverage." (Dkt. # 18, at 5). GICA cited the following portion from *Fidelity & Cas. Co. of New York v. Envirodyne Engineers, Inc*., 122 Ill.App.3d 301, 305, 461 N.E.2d 471, 474 (1ˢᵗ Dist.1983) to support its proposition:

> the duty to defend flows in the first instance from the allegations in the underlying complaint; this is the concern at the initial stage of the proceedings when an insurance company encounters the primary decision of whether to defend its insured. However, if an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty *by offering evidence* to prove that the insured's actions fell within the limitations of one of the policy's exclusions.

122 Ill.App.3d at 304, 461 N.E.2d at 473 (emphasis supplied).

What relevance this proposition had to the principle that well-pled allegations in a complaint must be taken as true, GICA never paused to explain. Obviously, the passage does nothing to support GICA's novel take on the law that allegations in an insurer's declaratory judgment complaint can come into play or constitute "evidence" or trump the underlying complaint.

GICA, nonetheless, went on to argue that, because it:

> brought a timely declaratory judgment action, it may offer extrinsic facts to prove that the underlying plaintiffs' damages fall within the care custody or control exclusion. Moreover, at this stage in the case, when the plaintiff has moved for judgment on the pleadings, this court must take as true [GICA]'s allegations establishing that the underlying plaintiffs' damages were property damage to property within the insured's care custody or control.

(Dkt. # 18, at 6)(Emphasis supplied).

As the memorandum opinion noted, all the state cases GICA cited made clear that evidence meant just that – evidence that would suffice in a summary judgment case. 631 F.Supp.2d at 978.

6

*See also infra* at 7, *et. seq.* But this was not intended to mean that Illinois law governed interpretation and application of Rule 12 (c) or that GICA was required to produce evidence in a Rule 12(c) proceeding. Even the state court appellate cases GICA cited merely *allowed* an insurer to present *evidence* to support its declaratory judgment claim; none of them made it a requirement. *See Envirodyne, American Economy Insurance. Co. v. Holabird and Root*, 382 Ill.App.3d 1017, 1031, 886 N.E.2d 1166, 1178-1179 (1st Dist. 2008), *Fremont Compensation Insurance. Co. v. Ace-Chicago Great Dane Corp.*, 304 Ill.App.3d 734, 741, 710 N.E.2d 132, 137 (1st Dist. 1999), *Country Mut. Insurance. Co. v. Waldman Mercantile Co., Inc.*, 103 Ill.App.3d 39, 40, 430 N.E.2d 606, 608 (5th Dist. 1981).

None of these cases were judgment on the pleadings cases under Rule 12(c). *Envirodyne* and *Holabird* were state summary judgment cases, *Country Mut.* involved a trial, and *Fremont* involved Illinois' voluntary dismissal rule, 735 ILCS 5/2-619(a), which allows a party to move for dismissal on the face of the complaint or to support its motion with an affidavit.[3] None of these cases say anything about allowing insurers to rely on their own allegations in their declaratory judgment complaints – this was just GICA's faulty interpretation of the word "evidence" in the state court cases on which it relied.[4] In fact, it was precisely because of the rule in Illinois that a court in a

_____

[3] The movant in *Fremont* supported its motion with a deposition transcript. The court said that "[a]lthough section 2-619 speaks only of supporting a motion for involuntary dismissal with affidavits..., it has long been held that discovery depositions may also be used. 304 Ill.App.3d at 741, 710 N.E.2d at 137.

[4] *See Envirodyne*, 122 Ill.App.3d at 305, 461 N.E.2d at 474 ("If a crucial issue will not be determined, we see no reason why the party seeking a declaration of rights should not have the prerogative *to present evidence* that is accorded generally to a party during a motion for summary judgment in a declaratory proceeding.")(emphasis supplied); *Holabird*, 382 Ill.App.3d at 1031, 886 N.E.2d at 1178-79 (" . . . the trial court " 'need not wear judicial blinders' and may look beyond the complaint at other *evidence* appropriate to a motion for summary judgment.")(emphasis supplied); *Fremont*, 304 Ill.App.3d at 743, 710 N.E.2d at 139 (1st Dist. 1999)(". . . the court may consider *extrinsic evidence* bearing on the question of coverage and is not
(continued...)

7

declaratory judgment action looked only to the underlying complaint that the Illinois Appellate Court had devised the "extrinsic evidence" option for insurers.

The reference to the need for evidence, which appeared three-quarters of the way through the memorandum opinion in response to GICA's argument was meant as nothing more than an explanation of the only way that evidence *could* come into play in a Rule 12(c) proceeding, which would occur only if the insurance company voluntarily chose to respond to a Rule 12(c). But as the memorandum opinion noted, that would convert the proceeding into one for summary judgment under Rule 12(d). *See* 631 F.Supp.2d at 977-979.

GICA's focus on a few sentences at the end of the memorandum opinion caused it to miss the opinion's meaning. But, "[j]udges expect [and are entitled to have] their pronunciamentos...read in context . . . ." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(emphasis supplied); *see also United States v. Ingram*, 172 U.S. 327, 328 (1899)(chastising counsel for "pick[ing] out a sentence or two in the opinion . . . , and, severing them from the balance . . . .").

The memorandum opinion reiterated that the cases GICA relied upon and, indeed, nearly all the cases in which evidence was considered in the duty to defend determination were *summary judgment* cases. 631 F.Supp.2d at 978. The remaining cases involved trials or procedures like 735 ILCS 5/2-619(a) that specifically envision the production of evidence. It was apparent that what GICA hoped to shoehorn into these evidence cases were its own allegations in its declaratory judgment complaint, all the while:

---

[4](...continued)
restricted only to a consideration of the allegations of the complaint in the underlying litigation and the terms of the insured's policy.")(emphasis supplied); *Country Mut. Ins. Co. v. Waldman Mercantile Co., Inc.*, 103 Ill.App.3d 39, 40, 430 N.E.2d 606, 608 (5th Dist. 1981)("The facts as established by the *evidence* presented in the trial court are relatively simple.")(emphasis supplied).

8

> Here, the [declaratory judgment complaint] alleges that the underlying plaintiff's
> property was destroyed in a fire in a mall, after business hours, at a time when only
> the insured's employees had access to the mall. Thus, the extrinsic facts alleged in
> the [declaratory judgment complaint] established that the insured had care, custody
> and control of the property sufficient to trigger the "care, custody and control"
> exclusion. . . . Accordingly, Defendant's Motion to Dismiss should be denied.

(Dkt. # 18, at 6). Despite the cases on which it relied, GICA was arguing its own allegations in its

declaratory judgment complaint, should play the decisive role and exclusive in the determination

of whether the Rule 12(c) motion should be denied.

Again, a response seemed necessary; in hindsight, perhaps that was a bad choice. The

memorandum opinion pointed out the standards under Rule 12(c) at the beginning of the Analysis

section, 631 F.Supp.2d at 972, and went on for five pages to consider the underlying complaint –

and only that pleading – in the context of applicable Illinois law. 631 F.Supp.2d at 972-77. The

opinion noted that GICA had ignored the allegations in the underlying complaint and went on to

explain that GICA's *allegations* were not *evidence*. 631 F.Supp.2d at 978-80. But again, this was

not intended to require that GICA come forward with evidence in response to the Rule 12(c) motion.

Out of an abundance of caution, the memorandum opinion addressed the possibility that

GICA was arguing the judgment on the pleadings motion should be put off until it had the

opportunity to gather and present evidence. The opinion explained that this was not how

Fed.R.Civ.P. 12(c) and Rule (d) worked. *If* GICA wanted to present evidence – as it seemed it did

– Rule 12(d) transformed the proceeding into a summary judgment proceeding. 631 F.Supp.2d at

979. GICA not only did not present evidence, it didn't even advert to any, as it had the right not to

do, under 12(c). Hence, since the underlying complaint showed a duty to defend, the Rule 12(c)

motion was granted. But not because Rule 12(c) required a party to come forth with evidence, but

rather because on the record as it existed, the motion was well founded. Here is what the opinion said after its discussion about Rule 12(c) and (d):

> GICA cites no case, and we have been unable to find one, that remotely suggests let alone holds that in the context presented by this case, that an insurance carrier can defeat a party's motion for judgment on the pleadings regarding the applicability of a care, custody or control exclusion simply by pleading that damaged property was in the care custody or control of the insured.

*General Insurance. Co. of America*, 631 F.Supp.2d at 979. Nothing in the Seventh Circuit's opinion suggests that this holding was in error, and there is no reason to disturb it.

## C.

There is nothing in the isolated passage in the Seventh Circuit opinion on which GICA relies that supports GICA's conclusion that its declaratory judgment complaint, not the underlying complaint in the state court, determines its obligation to defend its insureds. Here is the passage on which GICA relies:

> It is true that duty-to-defend questions in insurance-coverage disputes can sometimes be resolved at the pleadings stage on a Rule 12(c) motion for judgment on the pleadings. *See, e.g., Nautilus Insurance. Co. v. 1452–4 N. Milwaukee Ave., LLC,* 562 F.3d 818, 822–24 (7th Cir.2009). But not always. Illinois insurance law does not alter the normal operation of the Federal Rules of Civil Procedure, although the magistrate judge seemed to think that it does.

2011 WL 1663374, *3.

When this comment is put in the informing context of the paragraphs preceding it – as it must be lest it be "quite misleading," *Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 322 (1985); *see also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010)(*en banc*)(general expressions in judicial opinions must be read in light of the subject under consideration) – it is

apparent that the Court of Appeals held no more than that a party can, if it chooses, convert a Rule 12(c) motion into one for summary judgment under Rule 12(d); but it may not be required to do so. The topic under discussion was not whether an insurer's duty to defend is determined "solely by reference to the allegations in the underlying complaint. Rather, it was whether an insurer's duty to defend is determined "solely by reference to the allegations in the underlying complaint, or may the insurer present evidence to establish that the loss alleged in the complaint is not covered under its policy." Here is what the Court of Appeals said:

> On the merits this appeal presents the following question of Illinois insurance law: Is an insurer's duty to defend determined solely by reference to the allegations in the underlying complaint, or may the insurer present evidence to establish that the loss alleged in the complaint is not covered under its policy? Decisions from the Illinois Appellate Court hold that although the duty to defend is ordinarily determined by examining the allegations of the underlying complaint, when an insurer seeks a declaratory judgment on the issue of coverage, it may present evidence to demonstrate that its policy does not cover the loss in question. *See, e.g., Am. Econ. Insurance. Co. v. Holabird & Root,* 382 Ill.App.3d 1017, 320 Ill.Dec. 97, 886 N.E.2d 1166, 1175–78 (Ill.App.Ct.2008); *Fid. & Cas. Co. v. Envirodyne Eng'rs, Inc.,* 122 Ill.App.3d 301, 77 Ill.Dec. 848, 461 N.E.2d 471, 473–74 (Ill.App.Ct.1983). In its recent decision in *Pekin Insurance Co. v. Wilson,* 237 Ill.2d 446, 341 Ill.Dec. 497, 930 N.E.2d 1011, 1019–21 (Ill.2010), the Illinois Supreme Court cited this line of cases with approval.

> The magistrate judge noted these cases but oddly required General Insurance to present evidence on the duty-to-defend question *at the pleadings stage* in response to the defendants' Rule 12(c) motion for judgment on the pleadings. It is not surprising, then, that General Insurance asked the court to enter its order as a final judgment to set up an immediate appeal. Under Rule 12(d) of the Federal Rules of Civil Procedure, a motion for judgment on the pleadings must be treated as a motion for summary judgment *if* matters outside the pleadings are submitted. Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). But this does not mean that a party opposing a Rule 12(c) motion for judgment on the pleadings *must* submit evidence in order to avoid entry of judgment against it. And that is precisely what the court required General Insurance to do.

> It is true that duty-to-defend questions in insurance-coverage disputes can sometimes be resolved at the pleadings stage on a Rule 12(c) motion for judgment on the pleadings. *See, e.g., Nautilus Insurance. Co. v. 1452–4 N. Milwaukee Ave., LLC,* 562 F.3d 818, 822–24 (7th Cir.2009). But not always. Illinois insurance law does not alter the normal operation of the Federal Rules of Civil Procedure, although the magistrate judge seemed to think that it does.

6544 F.3d at 378.

If the court intended to say that the declaratory judgment complaint, and not the underlying complaint control the outcome of an inquiry regarding the carrier's duty to defend, it surely would have said so expressly and pointedly, for that would have announced a principle that would have been contrary to at least a dozen Seventh Circuit cases – a point made by Judge Easterbrook during the oral argument. When GICA's counsel said that he could not see why the federal rules did not require a judge, faced with a motion for judgment on the pleadings by an insurance carrier, to consider and take as true the allegations in the *declaratory judgment complaint*, Judge Easterbrook made clear that the question was whether *that* complaint was relevant – it was not:

> Judge Easterbrook: The question is not one of pleading, but of relevance, so if you want to address the question of whether they're relevant under Illinois law, that would probably be more helpful.

> GICA: Alright, well, your honor, I think that is; there's no question that's relevant under Illinois law because the Illinois law has made a very clear distinction, between situations where an insurance carrier does – takes no action upon receiving a complaint, doesn't either defend subject to reservation of rights and doesn't file a declaratory action and situations where . . . the insurer files a declaratory judgment action. In cases where the insurer files a declaratory judgment action, the courts have made it abundantly clear that facts external to the underlying complaint can be considered. And I think the *Envirodyne* case is the uh, is probably the case that's most constructive [sic] in this regard, your Honor, . . .

Of course, that response did not begin to answer the question whether a court had to look to

12

the allegations of the declaratory judgement complaint, and ignore the underlying complaint. GICA's counsel then quoted the same passage from *Envirodyne* that GICA relied upon in its response brief in this court – the passage that talks about *evidence* being admissible if the carrier chooses to utilize it. Judge Rovner did not find that response to be pertinent to the question of whether GICA had been required to produce evidence, at the pleadings stage, when it chose not to. And for her, that was the issue – as it ultimately was for the other members of the panel:

> Judge Rovner: But isn't your argument that you don't have the burden to produce any such evidence until summary judgment?

GICA's counsel, while answering that question affirmatively, then went on to give the following, non-responsive answer:

> GICA: Exactly. . . . until we get to the summary judgment stage, this court, the trial court, are [sic] *required to accept as true the factual allegations in my complaint*. The factual allegations were sufficient when coupled with the underlying complaint to take this outside of the duty to defend.
>
> \*         \*         \*
>
> . . . but I can provide facts outside the, uh, outside the underlying complaint. And I think Illinois case law is very clear on this.  So then the question is, do I have to present evidence –

Judge Easterbrook left no doubt as to his disapproval of the proposition being advanced:

> Judge Easterbrook: *If Illinois law is that clear, we're going to have to overrule quite a bunch of our cases, because we have said the opposite of what you've said about Illinois law.*

> GICA: I'm sorry, I didn't, I didn't, under – hear –

> Judge Easterbrook: If you are correct, *you're asking us to overrule I should think at least a dozen of our cases, which have repeatedly held the opposite about Illinois law.*  Now maybe we're wrong --

13

GICA: You know, your Honor, I'm not –

Judge Easterbrook: *You don't seem to acknowledge that you're asking for quite a sudden change in the law of this Circuit.*

*        *        *

Our norm is that when we do our best to decipher state law, we stick with it until unless that supreme court of the state tells us we're wrong. What you're asking us to do is extend language in an Illinois appellate opinion and abandon Circuit law on that basis, without the intervention of the state supreme court, because *Pekin certainly doesn't support your view.*

(Emphasis supplied).

Judge Easterbrook's colloquy with GICA's counsel and statements in case after reported case involving an insurance carrier's duty to defend leave no doubt that in a Rule 12(c) proceeding, the allegations of the underlying complaint control, not the allegations in the declaratory judgment complaint. That complaint is simply irrelevant to the analysis.

Nothing in the portion of the panel opinion on which GICA relies supports its position. When Judge Sykes said, "Illinois insurance law [which in some contexts allows a carrier to introduce "evidence"in order to go beyond the underlying complaint] does not alter the normal operation of the Federal Rules of Civil Procedure," all that was meant was that Rule 12(c) does not require a declaratory judgment plaintiff to come forward with evidence, on pain of losing the motion. Even read without the informing context of the paragraphs preceding it, *see supra* at 11, the court's reference to the "normal operation of the Federal Rules of Civil Procedure" could not have been to the requirement that allegations in complaint must be taken as true, since that is a judicially created and imposed requirement in Rule 12 (b)(6) and Rule 12 (c) cases, not a "Federal Rule[ ] of Civil Procedure."

If GICA is right, the Court of Appeals' decision in this case signals a radical and

pronounced change in the law of this Circuit. But Judge Easterbrook's questioning and the phrasing of the opinion, itself, make clear this was not what the court of appeals intended. If it meant to announce the rule for which GICA contends, its decision would, by Judge Easterbrook's count, be overruling at least a dozen prior Seventh Circuit decisions. "Overruling a precedent is not a step [the court] take[s] lightly, [given] the potential for 'disruption, confusion, and uncertainty' that can result." *NewPage Wisconsin System Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. and Service Workers Intern. Union, AFL-CIO/CLC* 651 F.3d 775, 779 (7th Cir. 2011). Such a dramatic change in precedent would have been announced clearly, and the panel would have circulated the opinion to the active members of the court pursuant to Circuit Rule 40(e) to determine whether *en banc* review was desired. Neither occurred.[5]

GICA's concession that "the underlying complaint did not foreclose coverage"(Dkt. # 64, at 6) is fatal to its contention that it has no duty to defend. It does not diminish the force of that concession to say, as GICA does, that "nothing in the underlying complaint precluded the operation of the care custody or control exclusion." (Dkt. # 64, at 6). In many, if not most cases, "nothing in

---

[5] Rule 40(e) provides:

Rehearing Sua Sponte before Decision. A proposed opinion approved by a panel of this court adopting a position which would overrule a prior decision of this court or create a conflict between or among circuits shall not be published unless it is first circulated among the active members of this court and a majority of them do not vote to rehear en banc the issue of whether the position should be adopted. In the discretion of the panel, a proposed opinion which would establish a new rule or procedure may be similarly circulated before it is issued. When the position is adopted by the panel after compliance with this procedure, the opinion, when published, shall contain a footnote worded, depending on the circumstances, in substance as follows: This opinion has been circulated among all judges of this court in regular active service. (No judge favored, or, A majority did not favor) a rehearing en banc on the question of (e.g., overruling Doe v. Roe).

15

the underlying complaint [will] preclude[ ] the operation" of an exclusion. But if the underlying complaint does not show that an exclusion is "clear and free from doubt," then the insurance carrier has an obligation to defend.  Phrased differently, if it could go either way, the underlying case is potentially within the terms of the policy and a defense is required.  *See, e.g, Country Mut. Insurance. Co. v. Olsak*, 391 Ill.App.3d 295, 305, 908 N.E.2d 1091, 1101 (1st Dist. 2009)("The court must liberally construe the underlying complaint and the insurance policy in favor of the insured."); *Greenwich Insurance. Co. v. RPS Products, Inc*., 379 Ill.App.3d 78, 85-86, 882 N.E.2d 1202, 1208-09 (1st Dist. 2008)(" an insurer may properly refuse to defend . . . if it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage, . . .any doubts as to coverage will be resolved in favor of the insured.").

## D.

That brings the matter back to the basis of GICA's motion for reconsideration:  its claim that the allegations in its declaratory judgment complaint, not the allegations in the underlying complaint are controlling and thus the order granting the insured's 12(c) motion must be vacated.  As already explained, there is nothing in the Seventh Circuit's opinion that indicates the former are to be part of the calculus or to control its outcome. Quite the contrary.

Echoing Judge Easterbrook's observations about "relevance" at the oral argument in this case, *Nautilus Insurance. Co. v. 1452-4 N. Milwaukee Avenue, LLC*, 562 F.3d 818, 823 (7th Cir. 2009) held that, "[a]t this stage of the proceedings [i.e. the pleadings stage], *only* the allegations in the *underlying complaints* are relevant . . . ." *Id.* at 823.  *Nautilus Insurance Co.* was discussing whether an exclusion operated to preclude coverage.  It didn't because the underlying complaint didn't mention any facts that would bring the exclusion to bear. *Nautilus Insurance. Co.* was cited

16

by the Court of Appeals in this case and by the memorandum opinion.

In *Pekin Insurance. Co. v. Wilson*, 237 Ill.2d 446, 458, 930 N.E.2d 1011, 1018 (2010), the issue was "whether other pleadings in the underlying action may be considered in determining the duty to defend . . . ." 237 Ill.2d at 458, 930 N.E.2d at 1018. The Illinois Supreme Court noted that the insurer had attached several pleadings to its motion for judgment on the pleadings, including its own declaratory judgment complaint. 237 Ill.2d at 462, 930 N.E.2d at 1021. Absent from the attachment was the counterclaim in the underlying lawsuit which, as it turned out, decided the issue. *Id.* The declaratory judgment complaint did not enter into it. This was the case Judge Easterbrook in oral argument in the instant case told GICA's counsel was of no help to GICA and "doesn't remotely deal with the question of what is the relation between the allegations in the complaint in the underlying suit and the allegations in a declaratory judgment action."

In short, neither the Seventh Circuit's opinion nor the panel's comments and questions at oral argument support the conclusion that an insurer's allegations in its declaratory judgment complaint control in a case involving an insurer's duty to defend. Yet, that is the argument GICA continues to make. The argument being mistaken, the motion for reconsideration must be denied.

### E.

GICA's backup arguments are baseless and run afoul of the basic rules governing motions to reconsider. First, after ignoring the allegations of the underlying complaint in the first round of briefing on this matter, GICA finally points to a few of them in its motion for reconsideration. But this is an argument that comes far too late in the day. In a motion for reconsideration, a party cannot raise arguments it ought to have, and could have, raised earlier. *Solis v. Current Development Corp.*, 557 F.3d 772, 780 (7th Cir. 2009); *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004); *Bordelon v.*

17

*Chicago School Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir.2000).

Moreover, because GICA did not even briefly address the allegations of the underlying complaint in its response to the insureds' Rule 12(c) motion – notably, GICA's entire discussion of this issue referred exclusively to GICA's own allegations – the argument could be deemed waived. In any event, the allegations GICA points to now were all considered in the memorandum opinion because it focused on the underlying complaint, not GICA's declaratory judgment complaint. Specifically, GICA – about two years too late – submits that:

> The underlying . . . complaint alleges that prior to and inclusive of the date of the fire, the [insureds] *owned, maintained, and operated* Mega Mall prior to and inclusive of the date of the loss. Underlying First Amended Complaint, ¶¶ 16-18 (attached hereto as *Exhibit A* . . . ). Specifically, the underlying complaint alleges that the [insureds] owned, maintained and operated Mega Mall, and in doing so had a duty to use reasonable care and skill in compliance with the City's building code. *Exhibit A,* ¶ 76. In this same regard, the underlying complaint alleges, and attached as exhibits, facts contained within the City of Chicago's 2002 and 2005 lawsuits brought against the [insureds] for numerous Municipal Code violations. *Exhibit A,* ¶¶ 21-28. The complaints reflect the [insureds'] failure to maintain their property. *Exhibit A,* ¶¶ 21-28.
>
> Notably, the underlying complaint further alleges that a subsequent inspection of Mega Mall by the City's Commissioner revealed that the [insureds] illegally place locks on the building's emergency exit doors. *Exhibit A,* ¶ 29. . . . it is again alleged that [insureds] maintained and operated Mega Mall and owed a duty of care to its tenants to maintain the building with reasonable skill and care. *Exhibit A,* ¶ 76. The allegations are supported by the 2002 and 2005 lawsuits, and further affirmed by the allegations that the tenants were unable to access their merchandise stored inside the building while Mega Mall was temporarily closed and on the date of the loss.

(*Motion to Reconsider*, at 9-10).

As was discussed in the memorandum opinion, the underlying complaint left open the types of questions Illinois courts have found central to the application of care-custody-control exclusions:

> For instance, who had access to the property, and who could have moved it? Part and parcel of the requisite "possessory control" is "whether defendants were granted or exercised the right of access to the equipment in order to maintain, move, or protect

the [merchandise]." *Bolanowski*, 220 Ill.App.3d at 915, 163 Ill.Dec. 394, 581 N.E.2d
at 349. And whether "defendants were accorded or exercised the prerogative to do
anything with or to the plaintiffs' equipment" is also significant. *Id.* Nothing in the
Underlying Complaint says one way or the other. Did the vendors have access to the
merchandise at the time of the fire or outside of business hours? *See Country Mut.
Insurance. Co. v. Waldman Mercantile Co., Inc.,* 103 Ill.App.3d 39, 43, 58 Ill.Dec.
574, 430 N.E.2d 606, 609 (5th Dist.1981).

631 F.Supp.2d at 976. The allegations GICA now cites two years after its response to the Rule 12(c)

motion leave these questions open as well.

One may think that locks on emergency doors would be significant to the care-custody-

control determination. They would be, given the factors Illinois courts have looked to, if they were

in place at the time of the fire, were locked, and the vendors had no key. The allegations cited say

nothing about the second two factors. As for the first, the citation for locks occurred on June 8, 2005

(*Motion to Reconsider*, Ex. A, ¶ 29), and the fire occurred *over two years* later, on September 7,

2007. (*Motion to Reconsider*, Ex. A, ¶ 51). In the interim, the City allowed the Mega Mall to

reopen – on November 24, 2006 – presumably because all the problems, including the locks, had

been cured. (*Motion to Reconsider*, Ex. A, ¶¶ 47-48). Although it turned out that some problems

remained or had recurred four months later (*Motion to Reconsider*, Ex. A, ¶ 50), the underlying

complaint does not list locks on emergency doors as one of them, either at that time or at the time

of the fire. (*Motion to Reconsider*, Ex. A, ¶ 75-80). The letter from the City's legal department

listing remaining violations from the June 2005 citation as of March 7, 2007 – which was attached

to the underlying complaint and referenced therein – cites posting of address on building (#14),

posting of safe floor load limits (#29), adequate ventilation to outer air (# 32), holes and cracks in

interior walls and ceilings (#36), adequate bathroom ventilation (# 39), failure to submit plans and

obtain permits for repairs (#49), violations pertaining to the second floor radio station room and

19

storage (# 58), plumbing violation in beauty salon (# 71), ventilation violations (# 86-89), hot water

tank not functioning properly (# 90), no access to roof (#91), improper downspout from roof (# 105),

no strainers on some roof drains (# 106). (Underlying Complaint, Exs. 2, 10). There is nothing

about locks on emergency doors at that point.

As for the tenants having no access to their merchandise around the time of the fire, GICA

conspicuously fails to provide a citation to the underlying complaint for that purported allegation.

"An advocate's job is to make it easy for the court to rule in his client's favor . . . ." *Dal Pozzo v.

Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006). Claiming that there is an allegation

somewhere in an eighty-one-paragraph complaint and not saying where does nothing more than

hinder a court. It is "not the district court's job to sift through the record and make [GICA's] case

for [it]," *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010), or to

play "archaeologist with the record." *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir.1999). *See

also  Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 705 (7th Cir.2010); *Economy Folding Box Corp.

v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720-21 (7th Cir. 2008); *Dye v. United States*, 360 F.3d

744, 751 (7th Cir. 2004); *Corley v. Rosewood Care Ctr., Inc. of Peoria,* 388 F.3d 990, 1001 (7th

Cir.2004) (a court need not look through lengthy documents "that make up the record here to make

his case for [a party].").[6]

In any event, there is no such allegation in any of the sections of the underlying complaint

from the reopening until the mall was again closed after the fire. (*Motion to Reconsider*, Ex. A, ¶

---

[6]The Seventh Circuit has struck sections of briefs and factual assertions in briefs that lacks direct citation to easily identifiable support in the record. *See Casna,* 574 F.3d at 424; *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 754 n. 1 (7th Cir. 2006); *Corley v. Rosewood Care Ctr., Inc. of Peoria,* 388 F.3d 990, 1001 (7th Cir.2004).

47-53; 75-80). So, even if GICA's new argument were considered despite the rules covering motions for reconsideration, the same questions that were cited in the memorandum opinion remain open, as GICA would have realized had it done more than the "cursory review of the underlying complaint" that GICA's lawyers say they have limited themselves to. (*Motion to Reconsider*, at 10). "A cursory review of the underlying complaint" disserves not only GICA, but the court as well. Judges depend upon input from lawyers. *United States v. Cronic*, 466 U.S. 648, 655 (1984); *Dal Pozzo v. Basic Machinery Co., Inc.,* 463 F.3d 609, 613-614 (7th Cir.2006); *Burdett v. Miller,* 957 F.2d 1375, 1380 (7th Cir.1992). A cursory review of a critical pleading is inimical to the informed and responsible participation of counsel on which the adversary system depends. *Cf.*, *Kay v. Board of Educ. of City of Chicago,* 547 F.3d 736, 738 (7th Cir. 2008)(Easterbrook, C.J.).

## F.

Even more startling than the above admission is the last argument in support of the motion for reconsideration. It is GICA's contention that its sudden submission of *evidence* in the form of three "examinations under oath" show that the care-custody-control exclusion applies. The motion does not pause to explain how this or any other *evidence* – which GICA chose not to submit in opposition to the Rule 12(c) motion – bears in the slightest upon the question of whether the memorandum opinion erred in looking to the allegations of the underlying complaint instead of the allegations of the declaratory judgment complaint and accepting them as true.

But putting aside the obvious illogic of the argument, GICA's belated submission of evidence in support of the Motion for Reconsideration is nonetheless forbidden by and hopelessly inconsistent with the fundamental principles governing motions for reconsideration. Both Rule 60(b) and general

case law on motions for reconsideration permit reconsideration upon the presentation of newly discovered evidence – that is, evidence that could not have been discovered earlier with reasonable diligence. *See e.g., Egonmwan v. Cook County Sheriff's Dept*., 602 F.3d 845, 852 (7th Cir. 2010); *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002); *Bordelon,* 233 F.3d 524, 529 (7th Cir.2000); *Caisse Nationale de Credit Agricole v. CBI Industries, Inc*., 90 F.3d 1264, 1269-70 (7th Cir. 1996); *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987).

GICA's "examinations under oath" are not newly discovered; quite the contrary. They apparently were taken on October 23, 2007, October 29, 2007 and January 1, 2008 in connection with its prolonged and extensive investigation of the insureds' insurance claim. (*Motion to Reconsider*, Exs. C, D, E). Consequently, all of them predate not only the April 2009 memorandum opinion, but the filing of the declaratory judgment action on May 14, 2008.[7] Absent from GICA's motion to reconsider is any attempt to explain why this evidence could not have been introduced earlier. *Egonmwan*, 602 F.3d at 852. Accordingly, the information is not newly discovered within the meaning of the cases and cannot provide a basis for reconsideration.

When the insureds filed their motion, GICA had an option. It could have responded with argument discussing the allegations of the *underlying complaint* and explain why those allegations precluded judgment on the pleadings. Or, presumably, it could have introduced *evidence* and converted the motion into a motion for summary judgment under Rule 12(d).[8] GICA rejected both

---

[7] The January 2008 examination was continued on November 11, 2008 (*Motion to Reconsider*, Ex. E), but that was still months before the April 2009 memorandum opinion issued.

[8] Judge Easterbrook's comments leave some doubt on this score. The state cases that have allowed a court to go beyond the underlying complaint were, as he observed at the oral argument, appellate court cases and the Supreme Court has not definitively ruled on the issue.

courses, preferring instead to look solely to its own irrelevant declaratory judgment complaint – all the while conceding that the underlying complaint did not foreclose coverage. Strategic decisions have consequences, *International College of Surgeons v. City of Chicago*, 153 F.3d 356,366 (7th Cir.1998), and GICA must live with the one its lawyers made.

A motion for reconsideration is not an encore. There is no Act IV. Spiraling dockets and the scarcity of judicial resources simply make impossible requests for judges to reconsider their decisions by losing parties anxious to have another go at it. If that were permissible, or if a motion to reconsider could be used as a vehicle to raise arguments or introduce evidence that could and should have been adduced earlier, there would be a perverse incentive not to present all available arguments, but to litigate in steps. But that would result in an interminable prolongation of cases, *cf. Mungo v. Taylor,* 355 f.3d 969, 978 (7th Cir.2004); *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1269 (7th Cir.1996), and the urgent interests of other litigants in prompt resolution of their cases would be seriously compromised. *Cf. United States v. Underwood,* 130 F.3d 1225, 1227 (7th Cir.1997); *Chicago Observer, Inc. v. City of Chicago,* 929 F.2d 325, 329 (7th Cir.1991).

Finally, as discussed, the current argument that the court erred in refusing to accept as true the allegations in the declaratory judgment complaint has nothing to do with the evidence now proffered, and thus, this aspect of the motion is a *non-sequitur.*

### G.

The only appropriate change that GICA asks for – and shall receive – is the editing of the Rule 54 order [Dkt. #178] to specifically reflect the findings in the April 2009 memorandum opinion

that the defendants' motion for judgment on the pleadings was denied with respect to GICA's obligation to defend an entity called "Clark Mall."  Although "Clark Mall" had been dismissed from the underlying state court action, the Seventh Circuit indicated that, as things stood, given the Rule 54 order, GICA had a duty to defend Clark Mall in that underlying action.  2011 WL 1663374, *2("This sweeping language conflicts with the judge's holding that General Insurance has no duty to defend "Clark Mall" because no such entity is named as an insured.  General Insurance appealed. Until oral argument, no one noticed the anomaly in the judgment or questioned its propriety under Rule 54(b).").

## CONCLUSION

GICA's motion for reconsideration does not fit into the narrow class of the "exceptional case," for which the "extraordinary remedy" under Rule 60(b) is reserved.  *Dickerson v. Board of Education of Ford Heights, Ill.,* 32 F.3d 1114, 1116 (7th Cir.1994).  The motion rests on a *non sequitur,* is contrary to the basic rules governing motions for reconsideration, and is based on a misinterpretation of the Seventh Circuit's opinion.  The Seventh Circuit did not hold or suggest that in a federal action brought by an insurance carrier to determine its obligations to defend its insured, the allegations in the declaratory judgment complaint must be taken as true and trump the allegations in the underlying complaint.  To read the opinion as GICA has is to misread it.[9]

---

[9] The only error perceived by the Court of Appeals was in"oddly requir[ing] General Insurance to present evidence on the duty-to-defend question at the pleadings stage in response to the defendants' Rule 12(c) motion for judgment on the pleadings."  Because of that, the court found it " not surprising, then, that General Insurance asked the court to enter its order as a final judgment to set up an immediate appeal." *See supra* at 12. The court of appeals, neither held nor hinted that an insurance carrier's declaratory judgment complaint, as opposed to the underlying complaint, is to be looked to in determining the carrier's duty to defend. *See* 10 *et seq., supra.*

24

From the initial Rule 12(c) proceeding, through two motions for reconsideration, and an appeal, GICA has still not cited a case that holds that an insurer can ignore the allegations in the underlying complaint and require the court to look to the allegations in its declaratory judgment complaint, in order to defeat a Rule 12(c) motion. There being nothing in the court of appeals opinion that supports its arguments for reconsideration, the motion is denied except as discussed in paragraph **G**, *supra* at 23.

ENTERED:_____

UNITED STATES MAGISTRATE JUDGE

DATE: 12/13/11

25